LUCKING v. BALLANTYNE.

1. TAXES—LIEN—CHATTEL MORTGAGE—PRIORITY.

   A charter provision that all city taxes upon personal property shall be a lien thereon until paid, and no transfer of the property assessed shall operate to devest or destroy it, does not give the city a prior lien for taxes over the lien of a chattel mortgage given before the assessment.

2. SAME—RECEIVERS.

   A tax assessed against a chattel mortgagor cannot be enforced against a receiver appointed on the foreclosure of the mortgage, which was given before the property was assessed.

Appeal from Wayne; Donovan, J. Submitted February 18, 1903. (Docket No. 104.) Decided March 30, 1903.

Petition by Thomas M. Lucking, receiver of taxes for the city of Detroit, against John Ballantyne, receiver of W. J. Gould & Company, to compel the payment of certain taxes. From a decree for petitioner, defendant appeals. Reversed.

*John W. McGrath* (*Timothy E. Tarsney*, of counsel), for petitioner.

*Henry B. Graves*, for defendant.

CARPENTER, J. Defendant Ballantyne, the receiver in the above-entitled cause, asks this court to set aside a decree rendered by the court below, compelling him to pay the petitioner, the receiver of taxes of Detroit, $1,714.14 for city taxes assessed against the defendant corporation, W. J. Gould & Co., as the owner of the receivership property. The facts are as follows: On February 28, 1902, W. J. Gould & Co. executed and delivered to said Ballantyne, as trustee, a mortgage upon its stock of goods and other personal property, situated in the city of Detroit,

to secure the payment of the aggregate amount of $84,740, owing to a number of its creditors. March 1, 1902, said Ballantyne was appointed receiver of the property covered by said mortgage in this suit, instituted for the purpose of its foreclosure. Until July 12, 1902, said mortgaged property was sold in the ordinary course of trade. The balance undisposed of was sold in a lump at that time. The property covered by the chattel mortgage is insufficient to pay all the debts secured thereby. The assessment for the taxes in question was made against W. J. Gould & Co. It is insisted that the decree of the court below can be sustained on two grounds: (1) That the lien created by the law for the payment of taxes is superior to the lien created by the chattel mortgage under which the receiver holds; (2) that the assessment may stand as an assessment against the receiver.

1. The lien for taxes is given by section 10 of chapter 10 of the charter of the city of Detroit (see Act No. 472, Local Acts 1901), which reads as follows:

"All city taxes upon personal property shall be and remain a lien thereon until paid, and no transfer of the personal property assessed shall operate to devest or destroy such lien."

It is not necessary to decide whether the tax lien attached April 1st, when the property was listed for assessment, or July 1st, when the tax roll was placed in the hands of the receiver for collection. See *Eaton* v. *Chesebrough*, 82 Mich. 214 (46 N. W. 365). The mortgage was given several weeks, at least, before the tax lien attached. The question, then, is, Does the language of the section above quoted make the lien for taxes superior to liens existing when such tax lien takes effect? Clearly, nothing in the language of the statute would lead to any such conclusion. The provision, "No transfer of the personal property assessed shall operate to devest or destroy such lien," unquestionably refers to transfers made after the lien attaches. It does not apply to transfers made before. Such transfers might prevent the lien attaching, but by no pos-

sibility could they "devest or destroy" it. The legislature, having in express terms made this tax lien superior to subsequent transfers, clearly indicates, by omitting to specify its effect on prior transfers, an intent that it shall not be superior to them. The argument that the tax lien under consideration is superior to prior liens and transfers, because a tax lien on land is superior to such transfers, assumes a resemblance between taxes on land and taxes on personalty which does not exist. In the case of a tax on land, it may be stated as a general proposition that the land, and not the owner, is taxed. Purchasers and all persons interested in land understand this, and must pay the taxes as a condition of enjoying their property. It is otherwise with personal property. There the tax is against the person, because he owns personal property. It has always been the policy of the law—supposedly in the interest of trade—to make personal property easily transferable, and to secure to purchasers and mortgagees the entire title of the seller and mortgagor. It would be a radical change, indeed, in that policy, if their title is to be destroyed by a tax subsequently assessed against the person from whom that title was acquired. When the legislature intend to make such a change, it is to be presumed that they will indicate that intent by appropriate language. By the legislation in question they have not only failed to indicate it, but they have, as already stated, used language which is inconsistent with any such intent.

2. Is the tax to be treated as a tax assessed against the receiver? It is obvious, and it is distinctly contended by petitioner, that W. J. Gould & Co., notwithstanding the mortgage and appointment of the receiver, had a taxable interest in this property. It is obvious, too, that each of the creditors secured by the mortgage in question was liable to taxation for his credit secured by said mortgage. This record does not indicate, nor are we to presume, that such taxes were not paid. If it is also true (and this is a proposition which we by no means affirm) that the receiver was liable to taxation as the owner of an interest in said property,

it is sufficient to say that he was under no obligation to pay the tax assessed against W. J. Gould & Co.

The decree of the court below must be reversed, and the petition dismissed.

The other Justices concurred.