CHRYSLER CORPORATION, a Delaware Corporation, Plaintiff,

v.

LONG & LONG, INC., Commercial Credit Corporation, a Maryland Corp., James P. Long, Sr., Eleanor A. Long, United States of America, L. C. Laviolette, d/b/a Detroit Ad-Ver-Tis-Er, Harold E. Stoll, Wayne County Treasurer, Defendants.

Civ. No. 13843.

United States District Court
E. D. Michigan,
Southern Division.

Dec. 30, 1958.

542

Roy F. Andes, Detroit, Mich., for James P. Long, Sr., Eleanor A. Long, and Long & Long, Inc.

Bernard F. Zinn, Detroit, Mich., for Commercial Credit Corp.

Elmer L. Pfeifle, Jr., Asst. U. S. Atty., Detroit, Mich., for United States.

Samuel H. Olsen, Prosecuting Atty., of Wayne County, Detroit, Mich., for Wayne County and Wayne County Treasurer.

O'SULLIVAN, District Judge.

This Cause was submitted upon a stipulation of facts, which the Court adopts as its Findings of Fact.

For a better understanding, however, of the Court's Opinion and Conclusions of Law, the following should be recited. The subject matter of this suit is the sum of $25,518.56, deposited with this Court by the plaintiff, Chrysler Corporation. incident to its interpleader. $1,035 of this fund has been paid to the plaintiff for attorney fees and costs, leaving $24,483.56 available for distribution among the defendant claimants. This fund came into existence under the following circumstances: defendant Long & Long, Inc., a Michigan Corporation, was a Chrysler dealer. In early 1954, its franchise was cancelled and it returned to the Chrysler Corporation certain parts and equipment and was given credit therefor by the Chrysler Corporation. This credit, finally determined on August 10, 1954, was the sum deposited in court. The defendants assert conflicting claims and priorities to the balance of this fund. Their respective claims are as follows:

1) *James P. Long, Sr., and Eleanor A. Long, his wife:* On August 16, 1952, these defendants loaned to Long & Long, Inc., the sum of $177,718.26, taking, on that date, the corporation's note therefor, secured by a chattel mortgage of even date. At all times involved herein, said corporation continued to be indebted to the said individual Longs, who will be referred to hereafter as the Longs, thereunder, in an amount upwards of $125,-000. The chattel mortgage was recorded in the Wayne County Register of Deeds office on August 3, 1953. Prior to March 9, 1954, the individual Longs took possession of the goods covered by the chattel mortgage. On or about March 9, 1954, they joined with the corporate defendant Long & Long, Inc., in executing a promissory note to the Commercial Credit Corporation in the sum of $25,486.58 and subordinated their aforementioned chattel mortgage to a new mortgage then given by Long & Long, Inc., to Commercial Credit Corporation, securing said

last mentioned note and covering the same chattels that were subject to the earlier chattel mortgage held by the individual Longs. At the time of this latter transaction, the transfer to Chrysler Corporation of the property covered by both chattel mortgages was in contemplation and Long & Long, Inc., gave assignments of the proceeds that would arise from such transfer to the Commercial Credit Corporation and to the individual Longs, the assignment to the latter being, by agreement, subordinated to the chattel mortgage and assignment given to the Commercial Credit Corporation. The aforesaid assignment to the Commercial Credit Corporation was dated March 9, 1954, and the assignment to the individual Longs was dated March 10, 1954. There is no question about the validity and bona fides of the mortgage given by Long & Long, Inc., to the individual Longs in 1952. It was properly recorded, as required by Michigan statute, on August 3, 1953.

The individual Longs claim they are entitled to the fund on deposit with this court, less the amount due Commercial Credit Corporation upon its note from Long & Long, Inc. The stipulation of facts recites that the amount owed on this latter note at the time of the commencement of the interpleader proceedings was the principal sum of $11,664.-07. The note bore interest at the rate of six percent per annum.

2) *Commercial Credit Corporation:* Commercial Credit Corporation, using the trust receipt method, had been financing the purchase of automobiles by Long & Long, Inc., as a Chrysler dealer and on or about March 9, 1954, Long & Long, Inc., was indebted to Commercial Credit Corporation thereon in the sum of $120,-945.86. In addition to said debt, Long & Long, Inc., was then indebted to Commercial Credit in the sum of $25,486.58, which represented the amount owing to Commercial Credit Corporation by reason of the failure of Long & Long, Inc., to have accounted to Commercial Credit Corporation for all the proceeds of the sale of motor vehicles which were subject to trust receipts. On March 9, 1954, Long & Long, Inc., and defendants James P. Long, Sr., and Eleanor A. Long, his wife, joined in executing the aforesaid promissory note to defendant Commercial Credit Corporation in the amount of $25,486.58. The said chattel mortgage securing this note covered various parts and equipment, as well as future acquisitions by the mortgagor and specifically covered accounts receivable then owned by the mortgagor and such accounts as might thereafter be owned by the mortgagor. On the same date the assignment was executed by Long & Long, Inc., covering whatever credits might thereafter become due to Long & Long, Inc., by reason of its return to Chrysler Corporation of various parts and equipment for credit. As stated above, the balance owing on the last mentioned note at the commencement of this litigation was the sum of $11,664.07. Commercial Credit Corporation asserts its right to participate in the fund on deposit to the extent of the aforesaid principal amount, together with interest to December 9, 1957, in the amount of $3,624.61 and additional interest upon the aforesaid principal sum from and after December 9, 1957, at the rate of six percent.

3) *United States of America:* On January 15, 1954, and February 12, 1954, the District Director of Internal Revenue at Detroit, Michigan, assessed Federal income taxes against Long & Long, Inc., for the years 1945, 1946, 1948 and 1950. The said Director filed notice of the liens arising from such tax assessments with the Register of Deeds office for Wayne County, Michigan, during the month of May, 1954, and not prior thereto. It is conceded that the tax claims of the United States exceed the sum of $50,000. The United States of America claim a superior right to all defendants to the fund on deposit by reason of said liens.

4) *Wayne County and the City of Hamtramck:* The City of Hamtramck, Michigan, levied a personal property tax against the personal property of Long & Long, Inc., on January 1, 1953, in the amount of $1,372.04, which said taxes

were due and payable on July 1, 1953. On December 1, 1953, the Treasurer of the City of Hamtramck assessed an additional personal property tax against said Long & Long, Inc., for county taxes in the sum of $564.04. The total amount of these taxes was $1,936.08 and was duly returned delinquent to Wayne County Treasurer as of March 1, 1954. A four percent collection fee of $77.45 was assessed, and it is claimed that interest has been accruing upon these unpaid taxes at the rate of one-half of one percent per month from March 1, 1954.

These taxing authorities claim they are entitled to that much of the money on deposit as represents the amount of the aforesaid taxes with accumulated interest and penalties. They assert their right to be superior to the claims of all the other defendants.

5) *L. C. Laviolette:* This defendant was named in the interpleader and duly served, but has filed no answer or other pleading in the cause. Accordingly, there is no claim as to him pending in this litigation.

## Conclusions of Law

■ (a) *Personal property taxes of the City of Hamtramck and the County of Wayne:* The Hamtramck City Charter provides that personal property taxes shall be a lien on all personal property of the persons assessed, from and after the first day of July of each year and shall take precedence of "any sale, assignment or chattel mortgage, levy or other lien, on such personal property executed or made after said first day of July, except where such property is actually sold in the regular course of trade."

The Michigan statute covering the lien of the taxing authorities for personal property taxes (M.S.A. § 7.81, Comp. Laws Mich.1948, § 211.40) provides:

"The personal property taxes hereafter levied or assessed by any city or village shall be a first lien, prior, superior and paramount to any other claims, liens and encumbrances whatsoever upon the personal property assessed as herein provid-

ed, any provisions in the charter of such cities or villages to the contrary notwithstanding."

Although the Charter provisions of the City of Hamtramck would appear to make the lien for personal property taxes superior only to chattel mortgages executed on or after July 1, the date when the tax becomes due, the state statute provides no limitation upon the priority of the tax lien to chattel mortgages or other liens whether coming into existence before or after the date on which the lien for personal property taxes become effective. Briefs filed make reference to various Michigan cases, to wit: Lucking v. Ballantyne, 132 Mich. 584, 94 N.W. 8; Dunitz v. Albert Pick & Co., 241 Mich. 55, 216 N.W. 382; and Detroit Trust Co. v. City of Detroit, 269 Mich. 81, 256 N.W. 811, for the proposition that the chattel mortgage of the individual Longs is superior to the personal property tax liens. At the time of these decisions, the Michigan statute did not contain the provision quoted above providing for the priority of such tax liens over all other liens of whatever kind or nature and of whatever origin in time. These cases cited had to do with the question of whether or not a lien for personal property tax was superior to a chattel mortgage lien created prior to the effective date of the tax. Since these decisions, the Michigan statute has been amended (Act 38, P.A. 1934 (1st Ex.Sess.)) to specifically make a lien for personal property taxes superior to a chattel mortgage without reference to the time when the chattel mortgage lien was created or perfected. Construing this statute, the Supreme Court of Michigan has confirmed such superiority. In re Dissolution of Ever Krisp Food Products Co., 307 Mich. 182, 207, 11 N.W.2d 852; In re Rite-Way Tool and Manufacturing Co., 333 Mich. 551, 53 N.W.2d 373. The liens of the municipalities for personal property taxes came into being prior to the assessment and notice of the tax liens of the United States.

The fact that the property upon which this personal property tax lien was af-

fixed was sold prior to any enforcement of the lien does not, in this Court's opinion, detract from the municipal taxing authorities recovering the amount of their lien from the proceeds of the sale of the property subject thereto.

"The owner of the property cannot sell or remove the property, so as to effect the lien, unless the lienor consents or unless he does so under an order of court. It has been held that, where property encumbered by any fixed lien is sold free from the lien, the proceeds stand in the place of the thing sold and the lien attaches to the proceeds." 53 C.J.S. Liens § 12, p. 859. See also, In re Ever Krisp Food Products Co., supra.

Accordingly, this Court is of the opinion that the amount of the personal property taxes owing to the City of Hamtramck and the County of Wayne, with penalties and interest to date, shall first be paid out of the fund deposited under the interpleader.

■ (b) *Claim of the United States of America:* As indicated above, the stipulation of facts raises no question as to the bona fides of the chattel mortgage given by Long & Long, Inc., to James P. Long, Sr., and Eleanor A. Long, his wife, on August 16, 1952. This chattel mortgage was regularly recorded as required by Michigan law on August 3, 1953. Briefs of the United States attack the validity of this recording on the ground that the affidavit required by Michigan statute (M.S.A. 26.929, Comp.Laws Mich. 1948, § 566.140) was not affixed to the mortgage when recorded. In this the Government is in error, as the exhibit attached to the stipulation of facts as Exhibit A discloses that the statutory affidavit was affixed to the chattel mortgage when recorded. This chattel mortgage was, therefore, perfected as of August 3, 1953. The chattel mortgage to Commercial Credit Corporation was executed on March 9, 1954, and was properly recorded in the office of the Register of Deeds on March 10, 1954, thereby becoming perfected as a lien upon the property

in question. The Director of Internal Revenue gave notice of his tax lien in the month of May, 1954. The Internal Revenue Code of 1939, Section 3672, 26 U.S. C.A. § 3672, provides in relation to the priority of a lien for taxes such as is involved here, as follows:

"Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector.

"(1) In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory."

It is not disputed that the place of filing of such notice of tax lien under Michigan law is the Register of Deeds office. The filing of such notice in May, 1954, was subsequent to the perfecting of chattel mortgage liens of the individual Longs and the Commercial Credit Corporation. The United States' lien was, therefore, subordinate to the lien of the chattel mortgagees and likewise to that of the municipal taxing authorities.

In its brief, the United States questions whether or not the consideration for the chattel mortgage to the Commercial Credit Corporation was a present one. The stipulation of facts, however, sets forth that such mortgage was given for a present consideration.

James P. Long, Sr., and his wife, and the Commercial Credit Corporation both received assignments from Long & Long, Inc., specifically assigning to them any accounts receivable that would arise out of the contemplated transfer of mortgaged property to the Chrysler Corporation. It is claimed by the United States, however, that the chattel mortgage liens applied only to the personal property covered by the mortgages and not to the proceeds of a subsequent sale thereof. A reading of both of the chattel mortgages in question discloses that they covered

after-acquired property of the mortgagor. The mortgage to James P. Long, Sr., and wife, mentioned accounts receivable without specifically referring to accounts receivable that might thereafter arise, but did cover any "personal property of every kind and nature which at any time hereafter may be purchased for, or added to, or used in connection with said personal property or business". The mortgage to the Commercial Credit Corporation specifically covered all accounts receivable which might at any time hereafter be added to or used in connection with the personal property subject to the chattel mortgage.

■■ The United States claims that somewhere between the time of the perfecting of the chattel mortgage liens of James P. Long, Sr., and his wife, and Commercial Credit Corporation, and the time that the account receivable became payable from the Chrysler Corporation to the mortgagor in the aforesaid chattel mortgages, the liens thereof were lost and that the lien of the United States for its taxes became a prior lien. This Court does not think so. The Court believes that although not spelled out with as nice language as might have been employed, the two chattel mortgages did in fact constitute mortgages upon the accounts receivable which later accrued to Long & Long, Inc., from Chrysler Corporation. The Supreme Court of Michigan has held that book accounts may be made subject to chattel mortgages and that such a mortgage may apply to future as well as existing accounts.

In Dunn v. Michigan Club, 115 Mich. 409, 73 N.W. 386, a judgment creditor caused a writ of garnishment to be issued and sought to have such garnishment take precedence over a previous chattel mortgage which covered, among other things, present and future book accounts. In sustaining the priority of a chattel mortgage to an account receivable, the Supreme Court of Michigan said:

"It is no longer an open question in this state that accounts are the subject of assignment, and may be mortgaged, and this applies as well to future accounts as to existing accounts."

Aside from the question of whether or not a technical construction of the chattel mortgage given to James P. Long, Sr., and wife, sufficiently described future accounts receivable so as to constitute the chattel mortgage a lien upon accounts receivable, this Court is of the opinion that what was done here should in no way be construed as a relinquishment of the liens of the chattel mortgages in question.

On March 9, 1954, both James P. Long, Sr., and wife, and the Commercial Credit Corporation had valid liens which were prior in time and effectiveness to the notice of tax lien filed by the District Director of Internal Revenue. What they did in allowing the chattels to be delivered to Chrysler Corporation, taking at the same time assignments of the proceeds of credits to be issued by Chrysler Corporation, were but proceedings to protect and confirm the liens then existing. Mortgagees so protected should be allowed to recover their debts from the proceeds of the sale of property upon which they had a valid mortgage.

"A mortgagee is entitled to the proceeds of a sale of mortgaged property by the mortgagor when the sale is made upon the condition, agreement, or understanding that the proceeds shall be paid to the mortgagee or his representative. This right of the mortgagee is superior to the claims of the mortgagor, the mortgagor's creditors, a purchaser or other persons whose claims were inferior to the mortgage lien prior to the sale." 14 C.J.S. Chattel Mortgages § 266, p. 891.

Everything that was done by the chattel mortgagees in question evidenced a diligence to protect valid liens then existing. This Court does not feel that this diligence should be held to subordinate their rights to the tax lien of the United States.

Accordingly, it is this Court's opinion that out of the fund remaining after payment of the taxes of the City of Ham-

tramck and the County of Wayne, there shall be paid to the Commercial Credit Corporation the balance owing it on its note and chattel mortgage, to wit: $11,664.07, with interest thereon at six percent, being the interest fixed in the note and mortgage, to this date. The balance of the fund shall be paid to the defendants James P. Long, Sr., and Eleanor A. Long, his wife.

■ The defendant James P. Long, Sr., and Eleanor A. Long, his wife, contend that interest on the balance owing to the Commercial Credit Corporation should not be allowed subsequent to the date of filing of the interpleader and the deposit of the fund with the Clerk of this court. In support of this contention, they cite various authorities for the proposition that where a debtor deposits money in court in an effort to have determined to whom the amount deposited should be paid, interest on the obligation of such debtor is suspended from the time of deposit of the funds. There is good reason for such principle, but this Court does not feel it applies in this case. We are not dealing with any obligation of the Chrysler Corporation as a debtor. The defendants James P. Long, Sr., and wife, were joint makers on the note to Commercial Credit Corporation, the balance of which is to be paid to Commercial Credit Corporation out of the fund now on deposit. There was nothing to prevent James P. Long, Sr., and wife, paying the note in question and thus stopping the running of interest.

Commercial Credit Corporation has filed in this cause a cross claim against Long & Long, Inc., and James P. Long, Sr., and Eleanor A. Long. They seek thereby to obtain a judgment against the last mentioned defendants for the amount of the balance due on its note and mortgage of March 9, 1954, with interest. The order to be entered under this Opinion shall provide for such a judgment with proper recitation that such judgment is rendered upon a written instrument and that on the date of delivery of such instrument James P. Long, Sr., and Eleanor A. Long were

husband and wife, so that any execution to be issued upon said judgment will be in accordance with the provisions of Section 557.54 of Michigan Compiled Laws, 1948. Payment, however, to the Commercial Credit Corporation of the amount of its note with interest out of the fund now on deposit with the Clerk of this Court, shall constitute satisfaction of any such judgment.

A judgment in conformity with this Opinion may be presented for signature after submission to all counsel for approval as to form.