In re REEF PETROLEUM
CORPORATION, Debtor.

MANISTEE COUNTY and Cleon
Township, Plaintiffs,

v.

REEF PETROLEUM CORPORATION, a Michigan corporation, Reef Drilling Corporation, a Michigan corporation, Harris Trust and Savings Bank, a foreign corporation, and Unsecured Creditors Committee, Defendants.

Bankruptcy No. NT 83–02437.
Adv. No. 86–0224.

United States Bankruptcy Court,
W.D. Michigan.

Oct. 21, 1988.

See also, Bkrtcy., 51 B.R. 949.

Gockerman, Wilson & Saylor, P.C., Richard M. Wilson Jr., Manistee, Mich., for plaintiffs.

Dunn, Schouten & Snoap, Thomas W. Schouten, Wyoming, Mich., for defendant Harris Trust and Sav. Bank.

## OPINION

DAVID E. NIMS, Jr., Bankruptcy Judge.

This is an action by Cleon Township and Manistee County to recover the unpaid personal property taxes on an oil well drilling rig for the year 1982. This action involves the relative priorities of the tax lien of the taxing units and the consensual lien of Harris Trust & Savings Bank (Harris).

Manistee County and Cleon Township are making the same claim and hereafter will be referred to collectively as "Township" or "Plaintiff". Township and Harris have agreed to submit this proceeding on a stipulated statement of facts. At the pretrial conference, Reef Drilling Corporation was defaulted and the court indicated that a default judgment could be entered against it and in favor of Township for the full amount of the taxes due. No judgment was submitted to date by Township. Also,

at the pretrial conference, these proceedings were dismissed as to Reef Petroleum Corporation (Reef) and the Unsecured Creditors Committee.

## I. FACTS

Under agreement of counsel, this case is submitted under a "Stipulated Statement of Facts" and a "Supplemental Stipulated Facts". As the court is bound by these Stipulations they are paraphrased below:

### STIPULATED STATEMENT OF FACTS

1. On December 3, 1981, Reef Drilling Rig # 1 (the Rig) was owned by the Debtor herein, and leased to Reef Drilling Corporation pursuant to the written lease.

2. On December 31, 1981, the Rig was located in Cleon Township, Manistee County, Michigan.

3. On December 31, 1981, personal property taxes calculated on the basis of the Personal Property Tax Statement as of December 31, 1981, filed with Cleon Township were assessed against the Rig and Reef Drilling Corporation. Further, on December 31, 1981, Defendant Harris had a properly perfected, valid consensual lien in the Rig, pursuant to a security agreement dated September 28, 1978, and a financing statement filed initially with the Michigan Secretary of State on October 4, 1978.

4. On December 1, 1982, the unpaid personal property taxes became a valid and perfected lien against the Rig.

5. After remaining unpaid, the personal property taxes were returned as delinquent to the Manistee County Treasurer pursuant to law, on March 1, 1983.

6. On September 23, 1983, Debtor herein filed its voluntary petition in bankruptcy and the Rig became part of the bankruptcy estate. The Court granted Defendant Harris a lien on the Rig in addition to its consensual lien by way of its orders approving Debtor's use of cash collateral, the first of said Orders being dated the 26th day of September, 1983, as amended.

7. Plaintiffs were both notified of the bankruptcy prior to the entry of the Order Confirming Second Amended Plan of Reorganization of April 25, 1985. On the 31st day of October, 1983, the Manistee County Treasurer filed a Proof of Claim (Claim # 44) on behalf of Plaintiffs with respect to the unpaid taxes, claiming the same as a secured priority claim.

8. Plaintiffs were both listed on the bankruptcy mailing matrix as "Manistee County Treasurer, Manistee, Michigan 49660"; and "Cleon and Manistee Co. Treasurer, Courthouse, Manistee, MI 49660".

9. On May 24, 1984, this Court entered an Order based upon a Stipulation entered into by Defendant Harris, Debtor, and the Unsecured Creditors' Committee, which Order had the effect of establishing Defendant Harris' consensual liens as "valid, properly perfected first liens" on much of Debtor's equipment, including "all drilling equipment".

10. The May 24, 1984, Stipulation and Order was entered during an adversary proceeding, styled *Harris Trust & Savings Bank, et al. v. Reef Petroleum Corporation, et al.*, Adversary Proceeding No. 84-0012.

11. Plaintiffs were not parties to the adversary proceeding in which the Stipulation and Order was entered May 24, 1984.

12. The May 24, 1984, Stipulation and Order entered in the adversary was served on the six individuals whose names appear on the Order but was not served on Plaintiffs.

13. On July 12, 1984, this Court entered an Order Upon Application for Establishment of Procedure for Sale of Assets Free and Clear of Liens pursuant to Section 363 of the Bankruptcy Code.

14. Plaintiffs did not object to the entry of the Order of July 12, 1984. Further, Plaintiffs were served with all necessary and appropriate notice and are bound by the Order.

15. On August 27, 1984, this Court entered its Order of Sale confirming that the notice provided for in the July 12, 1984, Order was appropriate and all that was necessary for the case under Bankruptcy Code.

16. Plaintiffs did not object to this sale or the entry of the Court's August 27, 1984, Order of Sale. Further, Plaintiff were served with all necessary and appropriate notice and are bound by the Order.

17. On August 29, 1984, the Rig was sold at auction to a third party other than Harris, pursuant to the July 12, 1984, Order, and Defendant Harris received all of the net proceeds therefrom.

18. On April 25, 1985, this Court entered its Order Confirming Second Amended Plan of Reorganization of Reef Petroleum Corporation.

19. Plaintiffs did not object to the entry of the Order Confirming the Second Amended Plan of Reorganization. Further, Plaintiffs were served with all necessary and appropriate notice and are bound by the Order.

20. On June 26, 1985, the Debtor filed its Objection to the Plaintiffs' claim for unpaid taxes.

21. On June 26, 1985, all necessary and appropriate notice of objection was served on all interested parties, including Plaintiffs.

22. No one on behalf of Plaintiffs appeared in opposition to the Debtor's Objection to the Plaintiffs' claim.

23. On August 7, 1985, this Court entered its Order disallowing Plaintiffs' claim against Debtor for the unpaid personal property taxes, and no appeal was taken by the Plaintiffs to that Order.

24. Upon receipt of the August 7, 1985, Order Disallowing Claims, the Manistee County Treasurer retained present counsel to attempt to secure payment of the unpaid personal property taxes now in issue.

25. On September 28, 1985, Plaintiffs filed their Motion for Reconsideration of Disallowed Claims.

26. On October 2, 1985, Debtor filed its Objections to the Plaintiffs' Motion to Reconsider.

27. On February 6, 1986, Plaintiffs received confirmation from the attorneys for Debtor that the net proceeds of the sale of the Rig were paid to Defendant Harris.

28. Plaintiff and Debtor stipulated to the withdrawal of Plaintiff's Motion for Reconsideration of Disallowed Claims and an Order to that effect was entered by the Court on March 11, 1986. This Order did not allow or revive the original Claim # 44 of Plaintiffs nor did it prohibit Plaintiffs from seeking further relief from other parties who may be liable for payment of the taxes.

29. The following day, March 12, 1986, the instant action was filed against Debtor, Reef Drilling Corporation, Defendant Harris and the Unsecured Creditors' Committee.

30. Reef Drilling Corporation has been defaulted for failure to appear or answer Plaintiffs' Complaint.

31. By stipulation of counsel, Debtor and the Unsecured Creditors Committee have been dismissed from this action.

32. The base tax at issue in this action is $17,279.91.

33. No amount of the base tax, fees, interest or penalties have been paid.

34. The terms of all Orders, Stipulations, Motions, and Pleadings referred to in this Stipulated Statement of Facts are incorporated herein by reference as are the terms of all Exhibits.

SUPPLEMENTAL STIPULATED FACTS

35. On the date of the tax assessment, December 31, 1981, the Rig had an assessed valuation of $444,400 and the net proceeds received by Defendant Harris from the sale of the Rig was $287,283.83.

Not set forth in this opinion are the exhibits referred to in paragraph no. 34, but these will be referred to in the discussion. The Court will also take judicial notice of any documents or court papers which are a part of this file.

II. JURISDICTION

This Court has jurisdiction over this case by virtue of 28 U.S.C. § 1334, and this adversary proceeding constitutes a core proceeding. 28 U.S.C. § 157(b)(2)(K). Further, the confirmed plan provided that this

Court would retain jurisdiction after confirmation "to hear and determine all questions and disputes regarding liens ... between the debtor and/or committee and any other party...."

## III. ANALYSIS AND DISCUSSION

### A. PRIORITY OF LIENS

■ Originally, it appeared that the principal issue in this proceeding was whether Township's lien was superior to Defendant Harris' consenual lien. Harris seems to have conceded that the Township lien takes precedence because Harris' briefs raise no arguments to the contrary. However, in the event that I have misunderstood the position of Harris, I hold that the Township has a valid, perfected lien which is superior to that of Harris.

Generally, the priority of competing liens is determined by Michigan's Uniform Commercial Code. Mich.Comp.Laws § 440.9101 *et seq.* (1967) (Mich.Stat.Ann. § 19.9101 *et seq.* (Callaghan 1981)). However, Michigan's Uniform Commercial Code does not apply to statutory liens. Mich.Comp.Laws § 440.9102 (1967) (Mich.Stat.Ann. § 19.9102 (Callaghan 1981)). In order to establish the priority of a statutory lien, one must look outside the Michigan Uniform Commercial Code.

All personal property within the jurisdiction of the State of Michigan is subject to taxation unless exempted. Mich.Comp. Laws § 211.1 (1986) (Mich.Stat.Ann. § 7.1 (Callaghan 1984)). For taxation purposes, personal property includes all goods, chattels, and effects within the state and all other personal property not enumerated in the statute and not especially exempted by law. Mich.Comp.Laws § 211.8 (1986) (Mich.Stat.Ann. § 7.8 (Callaghan 1984)). All personal property taxes are to be assessed to the owner of the personal property unless the owner is not known. Mich. Comp.Laws § 211.3 (1986) (Mich.Stat.Ann. § 7.3 (Callaghan 1984)). If after being assessed, the personal property taxes remain unpaid, then the taxing unit is granted a statutory lien against the personal property. Mich.Comp.Laws § 211.40 (1986) (Mich.Stat.Ann. § 7.81 (Callaghan 1984)).

This statutory tax lien shall take precedence over all other claims, encumbrances, and liens. Mich.Comp.Laws § 211.40 (Mich.Stat.Ann. § 7.81 (Callaghan 1984)).

Reef, as the owner of Drilling Rig #1, was assessed personal property taxes for the Rig. Reef did not pay the personal property taxes when they became due. As a result, Township became a statutory lien holder pursuant to Mich.Comp.Laws § 211.40 (Mich.Stat.Ann. § 7.81 (Callaghan 1984)). Further, Township's statutory lien takes priority over all other claims, encumbrances, and liens pursuant to the same aforementioned statute. Therefore, the Township's statutory tax lien is superior to Defendant Harris' consensual lien.

In *In re Rite–Way Tool & Mfg.*, 333 Mich. 551, 53 N.W.2d 373 (1952), a receiver was appointed for Rite–Way Tool & Manufacturing. The debtor's machinery was subject to two consensual chattel mortgages. After the appointment of the receiver in 1946, personal property taxes for 1948 and 1949 became due but were not paid. The trial court held that the priority of payment would be: first, the costs and disbursements of the receiver; second, fees for the receiver and his attorney; and finally, taxes. The City of Detroit appealed. The Michigan State Supreme Court held that the first priority would be expenses of administration and taxes and then the chattel mortgages. The court stated:

> In view of the noted statutory and charter provisions, it seems too clear for argument that in the instant case the tax liens are prior and superior to the rights of the chattel mortgagees. In consequence, we deem it unnecessary to cite many judicial holdings to the same effect.

> Not only is it competent for the State to charge property with a lien for the taxes imposed thereon, but the legislature may, if it shall deem it proper or necessary to do so, make the lien a first claim on the property, with precedence of all other claims and liens whatsoever, whether created by judgment, mortgage, execution, or otherwise, and whether arising before or after the tax.

333 Mich. at 556, 53 N.W.2d at 376.

*See also Chrysler Corp. v. Long & Long Inc.,* 171 F.Supp. 541 (E.D.Mich.1958); *Cambron Tool Co. v. Mfr. Bank of Detroit (In re Cambron Corp.),* 27 B.R. 723 (Bankr.E.D.Mich.1983); *Geiger v. City of Southfield (In re Continental Credit Corp.),* 1 B.R. 680 (Bankr.N.D.Ill.1979).

Applying the Michigan statutes cited above and the well-established case law, I conclude that Township's statutory tax lien of the Township is superior to Defendant Harris' consensual lien.

## B. ADEQUATE PROTECTION AND NOTICE

■ When an entity has an interest in property, and that property is to be used, sold or leased, the court shall adequately protect the entity's interest by prohibiting or conditioning such use, sale or lease. 11 U.S.C. § 363(e). In the present case, Township had an interest in the Rig, and the Rig was to be sold at auction. Therefore, the court had the duty to provide adequate protection to Township. The court provided adequate protection in its Order of February 1, 1984. The Order provided:

> That the liens and security interests of all parties shall be transferred to the proceeds of the auction of Drilling Rig 1; and It is further Ordered that the proceeds of the auction sale of Drilling Rig 1 shall be deposited with the Clerk of the Court in an interest bearing account in the joint name of Harris, the Unsecured Creditors' Committee, and other parties until further Order of the Court.

Harris claims that it never received notice of Township's claim, and therefore, Township was not provided adequate protection by the Order of February 1, 1984. Reef filed its voluntary petition for relief on September 23, 1983. On October 31, 1983, Township filed its proof of claim as a secured claim. This claim used the caption of "In re Reef Drilling Corp.", but used the

case number of this case. On July 19, 1984, Township filed an amended secured claim using the caption: "In re: Reef Petroleum–Reef Drilling". Again the claim contained the proper case number. Furthermore, Reef, the Creditors Committee, and Harris were represented at all times by attorneys who were specialists in bankruptcy law. All parties were aware of the adequate protection required by 11 U.S.C. § 363(c) when the Order of February 1, 1984 was entered. Thus, even though Township listed the caption names incorrectly, both claims contained the proper case number. Accordingly, Reef and Harris were given notice of the lien claims of Township. This Court finds that Harris had notice of Township's lien before the entry of the Order of February 1, 1984. Therefore, there can be no question that Township was adequately protected.

## C. EFFECT OF THE DISALLOWANCE OF THE PROOF OF CLAIM

As indicated above, Township's proof of claim (# 44) was timely filed on October 31, 1983, and an amended claim (# 126) was filed July 19, 1984. On June 26, 1985, Reef objected to claim # 44. As far as I can determine, no objection has ever been filed as to claim # 126 which amended claim # 44. Thus, claim # 126 has not been objected to by Reef and has never been disallowed. Therefore, I hold that claim # 126 is a valid claim.

■ But even if Township relies upon the original claim # 44, I would have to hold that the disallowance of the claim did not eliminate the lien. As a general rule, creditors must file a claim in order to participate in a distribution. One well-established exception to this rule is "that secured creditors are entitled to recover on their security even if they did not file a proof of claim." *In re Hall,* 51 B.R. 326, 329–30, n. 5 (Bankr.D.Utah 1985) (citations omitted).[1]

1. Hall discussed the following cases:
   *Matter of Tarnow,* 749 F.2d 464 (7th Cir.1984); *In re Clawson,* 83C–02021, transcript of oral ruling (Bkrtcy.D.Utah September 25, 1984); *In re Atoka Agricultural Systems, Inc.,* 39 B.R.

474, 10 C.B.C.2d 787 (Bkrtcy.E.D.Va.1984); *Matter of Pierce,* 29 B.R. 612, Bankr.L.Rep. (CCH) § 69,228 (Bkrtcy.E.D.N.C.1983); *In re Brager,* 28 B.R. 966, Bankr.L.Rep. (CCH) § 69,121 (Bkrtcy.E.D.Pa.1983); *In re Spadel,*

In *In re Tarnow* 749 F.2d 464 (7th Cir. 1984), a secured creditor filed a claim two months late. The bankruptcy judge disallowed the claim and declared the lien extinguished. The district judge affirmed. The court of appeals reversed and remanded, holding that failure to file a claim did not warrant an order declaring the lien extinguished.

In *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186 (3d Cir.1987), the decedent's estate brought an action for the proceeds of a life insurance policy. The Small Business Administration (SBA) had guaranteed 90% of a $250,000 loan. The decedent secured the loan by assigning the $165,000 insurance policy as collateral. He then defaulted on the loan. Subsequently, he and his wife filed a petition under Chapter 7. The Lellocks received a discharge. The estate claimed that the assignment was extinguished when the underlying debt was discharged. The district court granted summary judgment in favor of the SBA, and held that even though the debt was discharged, the lien survived. The court of appeals affirmed. The court stated:

> While a minority of opinions have held that prefiling liens of secured creditors which are not disallowed or avoided in bankruptcy proceedings do not survive a bankruptcy discharge of the underlying debt, (*see In re Ray*, 26 B.R. 534 (Bankr. D.Kan.1983); *In re Williams*, 9 B.R. 228 (Bankr.D.Kan.1981)), we decline to follow this line of reasoning as it is clearly repugnant to bankruptcy policy. *See* Collier on Bankruptcy § 524.01, n. 17b (15th Ed.1983). We instead follow the majority of courts which hold that the Bankruptcy Code and its legislative history plainly establish the better rule of law—that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt. *See, e.g., In re Landmark*, 48 B.R. 626 (Bankr.D.Minn.1985); *In re Atoka Agri-*

cultural Systems, Inc., 39 B.R. 474 (Bankr.E.D.Va.1984); *United Presidential Life Ins. Co. v. Barker*, 31 B.R. 145 (N.D.Tex.1983); *In re Weathers*, 15 B.R. 945 (Bankr.D.Kan.1981).

Id. at 189.

In *Samorajczyk v. United States (In re Atoka Agricultural Sys. Inc.)*, 39 B.R. 474 (Bankr.E.D.Va.1984), the trustee claimed that because of the failure of Farmers Home Administration to file a proof of claim, its lien was extinguished. In holding the lien to be valid, the court stated:

> There is no doubt that FmHA did not file a Proof of Claim. As a result, there is not even a *prima facie* case that FmHA's claim is allowable. See, *Matter of Pierce*, 29 B.R. 612, 613–14 (Bkrtcy.E. D.N.C.1983); *In re Weathers*, 15 B.R. 945, 949 (Bkrtcy.D.Kan.1981). Both parties agree, however, that FmHA's claim is secured by a valid pre-petition lien. The instant situation is one which is directly addressed by section 506(d). Under section 506(d), a lien may be avoided only after a party in interest has requested that a court disallow the claim and the court does, in fact, disallow the claim. 11 U.S.C. § 506(d). Additionally, it is clear that for section 506(d) to have any meaning the filing of a complaint under section 506(d) is not the request for determination contemplated by the section. Prior to the motion of the trustee to avoid FmHA's lien, there has been no request that this Court rule on the allowability of the FmHA's claim. As a result, FmHA has not received its "day in court" as contemplated by Congress. To now avoid FmHA's lien without a prior hearing would be a violation of due process. For this reason, it would be improper for this Court to hold that FmHA's lien is void because of the lack of a Proof of Claim. It then must follow that FmHA's lien attached to the pro-

28 B.R. 537, 10 B.C.D. 506 (Bkrtcy.E.D.Pa. 1983); *In re Rebuelta*, 27 B.R. 137, 10 B.C.D. 351 (Bkrtcy.N.D.Ga.1984); *In re Hines*, 20 B.R. 44, 9 B.C.D. 106 Bankr.L.Rep. (CCH) § 68,760, 6 C.B.C.2d 689 (Bkrtcy.S.D.Ohio 1982); *In re Weathers*, 15 B.R. 945, 8 B.C.D. 524, 5 C.B.C.

2d 935 (Bkrtcy.D.Kan.1981); *In re Honaker*, 4 B.R. 415, 6 B.C.D. 474, 2 C.B.C.2d 208 (Bkrtcy. E.D.Mich.1980); *In re Hotel Associates, Inc.*, 3 B.R. 340, 6 B.C.D. 145, 1 C.B.C.2d 819 (Bkrtcy. E.D.Pa.1980).

ceeds of the auction held in escrow by the trustee.

The trustee argues that such a holding will allow creditors to frustrate the avoidance of their liens by the simple expedient of not filing a claim. This position ignores two basic premises. First, the filing of a Proof of Claim is clearly permissive under the Code. 11 U.S.C. § 501(a). Section 501(a) provides in pertinent part that: "[a] creditor or an indenture trustee *may* file a proof of claim." 11 U.S.C. § 501(a) (emphasis added). Thus, a secured creditor may remain aloof from the bankruptcy proceedings until such time as his security interest is formally challenged. *Matter of Pierce*, 29 B.R. 612, 614 (Bkrtcy.E.D. N.C.1983). Second, the trustee ignores the fact that a debtor or trustee may file a Proof of Claim if the creditor fails to timely file. 11 U.S.C. § 501(c).

Id. at 476.

In *Auditor General v. Newman*, 135 Mich. 288, 97 N.W. 703 (1903), at a tax sale in 1897, the land in question was sold by the State to Minnie Eldridge for the 1891 to 1894 delinquent taxes, which were a lien on the land. Upon her application, the Auditor General on May 8, 1900, canceled the sale as illegal and refunded the money to her. The contestant, Newman, purchased the land for delinquent taxes for 1897 at the 1900 annual tax sale. Believing that the 1891 to 1894 taxes were still a lien on the land, the Auditor General petitioned for the foreclosure of the liens. Newman contested the holding claiming that the sale of the 1897 taxes conveyed the entire fee of the land and was all the interest the State had, that the 1895 and 1896 taxes were paid (by Eldridge), and that these proceedings were unauthorized. The trial court sustained the claim of the contestant. In reversing, the State Supreme Court stated:

That the auditor general made a mistake, and canceled and refunded when the law did not authorize him to do so, does not destroy the lien, or operate as a payment of the taxes.... Newman's purchase did not operate to discharge the former liens, or to estop the State to assert them. It follows that the lien of

the State remains, and that it is the duty of the auditor general, by subsequent petition to proceed to foreclose.

135 Mich. at 290, 97 N.W. at 704.

The case of *Work v. County of Douglas (In re Work)*, 58 B.R. 868 (Bankr.D.Or. 1986), involved a Chapter 13 case where the court held that the fact that the plan failed to provide for payment of the tax lien was not binding on the county, even though no proof of claim was filed by the county, and the plan was confirmed. The court stated:

It has long been held that secured creditors with valid pre-petition liens on the debtor's property may ignore the bankruptcy proceedings and look to the lien for satisfaction of the debt. *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886); *Dizard & Getty v. Wiley*, 324 F.2d 77, 80 (9th Cir. 1963). This judicial rule was codified in the form of § 506(d) of the Bankruptcy Code. *Matter of Tarnow*, 749 F.2d 464, 466 (7th Cir.1984).

Id. at 869.

In the present case Township was a secured creditor with a valid pre-petition lien. Thus, even if the proof of claim was disallowed, the lien would survive bankruptcy.

## D. WAIVER OF RIGHT TO CONTEST ORDER DISALLOWING CLAIM

■ Township's first claim was disallowed by Order entered August 7, 1985. On September 28, 1985, the motion for reconsideration was filed. On February 14, 1986, Township, Reef, and the Creditors' Committee entered into a stipulation which provided that the motion for reconsideration "may be withdrawn without prejudice to the right of (Township) to file a subsequent motion or adversary proceeding in this court with respect to their claims for unpaid personal property taxes and without prejudice to the right of the debtor and creditors committee to object to said claims." An Order approving the Stipulation was signed March 11, 1986, and the Complaint herein was signed March 12th and filed March 13th. This Court can find no basis for the claim that Township

waived its right to contest the Order disallowing its claim. Therefore, this Court finds that neither the disallowance of the original Township's claim or the withdrawal of the motion for rehearing had any effect upon Township's lien.

## E. ORDER OF CONFIRMATION

■ Defendant Harris makes much of the fact that Township did not appear and object to the confirmation of the plan of reorganization. Township had no reason to object. A court approved stipulation provided for payment of Township's lien out of the proceeds of the sale of the rig.

Section 1123 of the Bankruptcy Code provides in part:

Notwithstanding any other applicable non-bankruptcy law, a plan shall—

. . . . .

(5) provide adequate means for the plans implementation, such as—

. . . . .

(E) satisfaction or modification of any lien; . . . .

11 U.S.C. § 1123(a)(5)(E).

Reef, Harris, and the Creditors Committee were all represented by attorneys who were experts in the field of bankruptcy law. They knew of the mandatory requirement of 11 U.S.C. § 1123(a)(5)(E). They did not deliberately violate the statute. They assumed, as did the attorney for the Township, that the satisfaction of Township's lien was already adequately provided for by the stipulation.

Defendant Harris relies upon *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). That case was very unusual. The proposed plan in a § 77(b) case under the 1898 Bankruptcy Act provided that guarantees by two stockholders would be cancelled. A creditor objected to the jurisdiction of the court, and after a hearing, the plan was approved. No appeal was taken. The creditor then filed an action in the state court against the guarantors. The Supreme Court refused to discuss the issue on the basis of *res judicata.*

In this case, the validity or priority of claim # 126 has never been contested. The Order and Stipulation provided that Township's tax lien attached to the proceeds of the sale. The plan provided for the payment of allowed tax claims. Relying upon these facts, and the fact that Township's tax claim # 126 had never been disallowed, Township had no reason to object to the plan. Therefore, because the validity or priority of Claim # 126 has never been litigated, *res judicata* does not apply.

I would therefore find that for the reasons stated, the lien of the Township is still valid and the confirmation of the Chapter 11 plan could not eliminate it.

## F. FAILURE TO OBJECT TO THE SALE

For the reasons set forth above, there was no reason for Township to object to the sale. It had a valid lien. Further, Reef, Harris, and the Creditor's Committee had furnished adequate protection for the lien holder by their Stipulation. Township relied upon the knowledge of bankruptcy law and the integrity of the attorneys who executed the stipulation. If the stipulation was not properly executed for any reason, then the sale would be void for failure to comply with the requirements of the Code that no sale of property of the estate shall be made without adequate protection to lien holders. Apparently the stipulation was properly executed, and as a result, Township was adequately protected. Therefore, Township's failure to object to the sale has no effect on its lien.

## G. LIABILITY OF HARRIS

■ Reef had no legal right to turn over to Defendant Harris the funds received on the sale of the Rig without first deducting the amount owed by Reef to Township. To allow Harris to retain these funds would result in an unjust enrichment. This Court finds that Harris has a legal and equitable obligation to turn over to Township the amount of the lien. The stipulated statement of facts does not indicate the amount of Township's claim. However, Township's proof of claim against Reef on July 19, 1984, is not disputed. Therefore, it is *prima facie* proof and is allowed in the

amount filed. The lien on the rig was $21,254.29, as of September 30, 1984. This amount includes interest and a collection fee.

## H. INTEREST AND COSTS

 Interest is allowed from September 30, 1984, to the date of judgment in the amount allowed by Michigan law on personal property tax claims. Under Michigan law, interest is allowed at the rate of 1% per month after the unpaid taxes are returned by a township to the county as delinquent. Mich.Comp.Laws § 211.44 (1986) (Mich.Stat.Ann. § 7.87 (Callaghan 1984)). Because this case is a proceeding in equity, no costs are allowed. *Smoot v. Fox*, 353 F.2d 830 (6th Cir.1965), *cert. denied*, 384 U.S. 909, 86 S.Ct. 1342, 16 L.Ed.2d 361, *reh'g denied*, 384 U.S. 958, 86 S.Ct. 1568, 16 L.Ed.2d 553 (1966); *In re Warstler*, No. 58, slip op. (Bankr.W.D. Mich. April 3, 1969).

## IV. CONCLUSION

Judgment shall be entered in favor of Manistee County and Cleon Township in the sum of $21,254.29, with interest from September 30, 1984, to the date of judgment in the amount allowed by Michigan law on personal property tax claims. Said judgment shall bear interest as provided by 28 U.S.C. § 1961(a) and (b).