BISHOP v BROWN

Docket No. 59158. Submitted June 9, 1982, at Grand Rapids.—Decided August 25, 1982.

Herbert L. Bishop and Judy A. Bishop filed suit in Calhoun Circuit Court to foreclose a land contract against Richard W. Brown, Kathy S. Brown, and Jeffrey L. Van Nortwick, who had entered into the land contract as joint tenants. When the defendants had failed to make three successive monthly payments and had failed to pay the 1979 winter taxes, plaintiffs gave notice of default and intent to accelerate payments of the remaining balance, as provided in the terms of the contract. Defendant Van Nortwick tendered payment of the past due monthly payments but did not have money to pay the overdue taxes. Plaintiffs refused the tender and filed the suit. A judgment of foreclosure was entered in favor of plaintiffs, Paul Nicolich, J. Defendant Van Nortwick appeals. *Held:*

1. Plaintiffs were clearly entitled to proceed with foreclosure quite apart from any alleged defects in the notice regarding when taxes became due or whether plaintiffs' sole remedy for past due taxes was to pay the taxes themselves and add the amount to the balance due.

2. The trial court did not err in granting foreclosure to plaintiffs. Plaintiffs were entitled to foreclose, without notice, based on the default on the three monthly installments alone. Plaintiffs were further entitled to foreclose for nonpayment of taxes, and the fact that plaintiffs may arguably have made a technical error in their notice of default does not preclude a foreclosure when such notice was not required by the contract and where appellant was in no way prejudiced by the error.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 71 Am Jur 2d, State and Local Taxation § 24.
   72 Am Jur 2d, State and Local Taxation §§ 842, 896.
[2] 72 Am Jur 2d, State and Local Taxation § 842.
[3] 77 Am Jur 2d, Vendor and Purchaser §§ 303, 421.
[4] 77 Am Jur 2d, Vendor and Purchaser § 421.

1. TAXATION — PROPERTY TAXES — TAX LIENS.

    Real and personal property taxes are due on December 1, which
    is the day when collection commences and is also the day the
    amounts assessed become a lien upon the property; such a lien
    continues until payment of the taxes (MCL 211.40; MSA 7.81).

2. TAXATION — PROPERTY TAXES — DELINQUENCY.

    Real and personal property taxes, which become due on Decem-
    ber 1 each year, do not become delinquent or past due until the
    following February 15; similarly, the due date for city summer
    taxes levied on property located within a city is July 1 and the
    delinquent date is September 15 (MCL 110.2, 117.3, 211.44;
    MSA 5.1931, 5.2073, 7.87).

3. CONTRACTS — REAL PROPERTY — LAND CONTRACTS — ACCELERA-
    TION CLAUSES.

    Acceleration clauses in land contracts are valid and enforceable.

4. CONTRACTS — REAL PROPERTY — LAND CONTRACTS — FORECLOSURE
    — NOTICE OF INTENT TO FORECLOSE.

    The institution of foreclosure proceedings is sufficient notice that
    the seller of property by land contract has elected to exercise
    the right to accelerate payment of the remaining balance; no
    prior notice of the intent to foreclose is necessary.

*Thomas R. Blaising,* for plaintiffs.

*Kreis, Enderle, Halpert & Etter, P.C.* (by *James B. Ford),* for defendant.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

ALLEN, J. Defendant Jeffrey Lee Van Nortwick appeals as of right from a judgment of foreclosure of a land contract entered July 17, 1981, following a bench trial. Judgment was also entered by default against defendants Richard W. and Kathy Sue Brown, but the Browns have not appealed. Two questions of apparent first impression, each common to the language customarily found in land

* Circuit judge, sitting on the Court of Appeals by assignment.

contracts, are raised on appeal: (1) when are taxes "past due", and (2) where taxes are admittedly past due, is the sole remedy of the land contract seller payment of the taxes himself and addition of the amount paid to the contract balance, or may the seller foreclose without first paying the taxes?

On September 25, 1976, the Browns and Van Nortwick entered into a land contract with plaintiffs' assignors for the purchase of property in Calhoun County. The purchase price was $20,000, of which $1,000 was paid down and the balance of $19,000 plus interest at 8-1/2% was payable at $188 per month plus taxes when due. Payments were made in full until the spring of 1980 when defendant Van Nortwick became involved in the final stages of a divorce, as a result of which he failed to make the monthly installments due for April, May, and June, 1980. In addition, Van Nortwick had not paid the 1979 winter school, county, and township taxes which were mailed to all property owners in the county on December 1, 1979.

On June 25, 1980, plaintiffs served notice of default and intent to accelerate payment on defendants, demanding payment within 15 days of the three past due monthly installments ($566), the past due winter taxes together with interest and penalty thereon ($770.47), plus $50 for preparation and service of the notice of default, for a total of $1,384.47, and stating that if that sum were not paid within 15 days plaintiffs would declare all sums remaining unpaid on the contract due and payable. When payment was not made within 15 days, plaintiffs, on July 17, 1980, accelerated the balance of $16,815.73 due on the contract and on August 11, 1980, filed a foreclosure action in circuit court. On July 21, 1980, Van Nortwick did

offer plaintiffs $754 for the then past due monthly installments,[1] but that tender was refused by plaintiffs, who proceeded with the foreclosure.

On appeal, Van Nortwick contends that the trial court erred in granting judgment of foreclosure for two reasons: First, though § 6 of the contract provides that the purchaser pay the taxes "when due", nothing in the contract itself states the exact date when taxes are due. In support of this position, defendant relies on *Union Trust Co v Grant,* 148 Mich 501; 111 NW 1039 (1907). Second, regardless of when taxes should be paid, the demand for payment "was misleading and fraudulent" because the sole remedy of plaintiffs under the contract was to pay the past due taxes themselves and add that amount to the contract as provided by § 8 of the contract. Defendant argues that he could have paid the past due monthly installments, and in fact did make a tender of such amount, but he did not have the ability to pay the taxes in addition.

The land contract was prepared by plaintiffs' attorney on a printed form of the Calhoun County Bar Association, revised October 20, 1973. The relevant portions of that contract provide:

"6. Vendor represents that all general property taxes which have heretofore become due and payable upon said lands and all special assessment taxes which have become a lien against said lands, whether payable in installments or otherwise, have been fully paid except: General Property taxes for the year 1976, first due and payable on or about December 1, 1976, which the parties have agreed to prorate and pay when first due and payable, and of which the vendors shall pay 269/365ths and the balance which purchaser agrees to pay. *Purchaser also agrees to pay when due all other taxes and assessments of every nature which shall become a*

---

[1] The tender of payment was for four monthly installments, since in the intervening period a fourth installment had become due.

*lien upon said premises hereafter* until said purchase price has been paid in full as herein agreed.

\* \* \*

"8. *Should purchaser fail to perform his obligation as agreed in paragraph 6 and/or 7 of this contract, vendor may pay such unpaid tax* and/or assessment, and/or insurance premium, and the amount thus expended shall forthwith be added to the balance then unpaid on this contract, and shall become due at once, and shall bear interest at the rate applicable to said balance until paid.

\* \* \*

"12. Time of payment shall be of the very essence of this contract. *If any money which purchaser agrees to pay to the vendor by the terms of this contract shall remain due and unpaid for thirty days, vendor may declare the whole balance then owing hereon due and payable forthwith, when this is not prohibited by law in the court in which the forfeiture or foreclosure action is brought.*

\* \* \*

"16. Upon default by the purchaser in making any of the payments required by this contract, or in any of the other covenants or agreements required by this contract to be performed by the purchaser, the vendor may: (a) bring an action against the purchaser at law for the balance of the agreed purchase price, or for any and all past due sums due and owing on said land contract; (b) foreclose this contract by action in the circuit court; (c) terminate or forfeit this land contract by summary proceedings in the district court, in the manner and with the remedies and effect now provided by Act 120, Michigan Public Acts, 1972 (MSA 27A.5701 *et seq.),* or any future amendment thereto." (Emphasis added.)

We find § 12 of the land contract dispositive of the instant case. That section provides that time is of the essence of the contract and that "if any money" which the purchaser has agreed to pay *to the vendor* "shall remain due and unpaid for

thirty days", the vendor may declare the whole balance due and payable forthwith. Monthly installments of principal and interest are payments due the vendor. Since appellant admits that he failed to make the three monthly payments from April 1 through June 1, 1980, and since two of those installments were more than 30 days unpaid when the notice of intent to default was given appellant on June 25, 1980, and the third installment became more than 30 days overdue prior to the 15-day deadline for payment set forth in the notice of intent to default, plaintiffs were clearly entitled to proceed with foreclosure quite apart from any alleged defects in the notice regarding when taxes became due or whether plaintiffs' sole remedy for past due taxes was payment of the taxes themselves and adding the amount to the balance due.

Nevertheless, because the issues raised by appellant are of obvious interest to the practicing bar, we take this occasion to repond to them in detail.

When do winter taxes become due under a land contract which provides that the buyer shall "pay when due" all taxes? That provision, appearing in § 6 of the instant contract, is common to the verbiage in the vast majority of land contracts. Surprisingly, the General Property Tax Act, MCL 211.1 *et seq.;* MSA 7.1 *et seq.,* does not per se give a precise date. However, the statute provides that winter taxes become a lien on December 1, and continue to be a lien until payment. MCL 211.40; MSA 7.81. The assessment and collection of real property taxes under Michigan law is excellently described in *United States v State of Michigan,* 346 F Supp 1277, 1279-1280 (ED Mich, 1972). That case holds that real and personal property taxes are "due" on December 1, which is the day when

collection commences and is also the day the amounts assessed become a lien upon such property.

"The tax roll must be delivered to the treasurer on or before the first day of December and immediately the treasurer 'must proceed to collect such taxes'. These taxes (pursuant to statute) have been 'a debt due to the township, city, village and county' since the preceding December 31, *i.e.,* 'the tax day provided for in sections 2 and 13' of the General Property Tax Law. On December 1 (the day when collection commences, *i.e.,* the 'due date') 'the amounts assessed (on any interest in real property) shall * * * become a lien upon such real property, and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof.'

"Thus, on December 31 all real property in the State of Michigan is given a taxable status. Subsequent to this tax day the land takes on a new characteristic, that of carrying a tax liability which will become due and payable on December 1 of the succeeding year. This taxable status being a matter of public record constitutes notice to all future vendees." (Footnotes omitted.)

But becoming "due" on December 1 does not mean that the taxes are "overdue" or delinquent. Winter taxes are not normally mailed out until December 1, and no one may rationally claim that a land contract purchaser would be delinquent if the taxes were not paid on December 2. The relevant question is not when do taxes first become due, but instead, when do taxes become overdue. Stated another way, when does the purchaser "fail to perform his obligation" to pay taxes as those words are used in § 6, or when is "default by the purchaser in making any of the payments required by the contract" as that language is used in § 16 of the contract? The trial court appeared to believe that taxes were not overdue until they

became delinquent and were not delinquent until three years had elapsed, but held foreclosure could proceed because there was no offer to pay the $564 for the three monthly installments when due until after 15 days from the date of receipt of the notice of intent to default.

"Because the taxes did not have a back lien on the property until they were delinquent—and in Calhoun County it's three years before property is put up for sale. But there was no offer of any payment of the $564.00 after the notice of default and acceleration."

We agree with the trial court that taxes are not past due until delinquent, but disagree that taxes are not delinquent until the property may be seized and sold for taxes three years later. Instead, we find delinquency commences when the county treasurer may first impose a penalty for late payment as set forth in § 44 of the General Property Tax Act, MCL 211.44; MSA 7.87. At the time of the default at issue here, that section, which has since been amended, provided that the township treasurer was to collect the taxes and in so doing could collect an additional collection fee of 3% on all taxes collected after February 14, and on taxes collected on or after March 1, the collection fee would be raised to 4% plus interest at 3/4 of 1% per month.

"On a sum voluntarily paid before February 15 of the succeeding year, the township treasurer shall add 1% for a collection fee. On all taxes paid *after February 14* the governing body of a city or township may authorize the treasurer to add to the tax and 1% fee an additional collection fee equal to 3% of the tax. * * * A 4% collection fee and interest on the tax at the rate of 3/4 of 1% per month shall be added to taxes collected by the township treasurer after the last day of February

and before settlement with the county treasurer, which payment shall be treated as though collected by the county treasurer." (Emphasis added.)

Application of the statute to the terms of the land contract in the instant case leads us to conclude that though property taxes first become due in the sense that they may first be paid on December 1, they do not become delinquent or past due until the following February 15. While additional fees may be charged on March 1, it is on February 15 that the purchaser "defaults" or "fails to perform" his obligation to pay such taxes.[2] Under § 16 of the land contract, default by the purchaser in making any payment required by the contract entitles the vendor to foreclose by action in circuit court or forfeit the contract by summary proceedings in district court.

Appellant argues that even if property taxes were delinquent and past due on June 25 when plaintiffs served their notice of default, the trial court erred since under § 8 of the contract the sole and exclusive remedy of the vendors is to personally pay the unpaid balance and add the amount paid to the balance of the contract. Again we disagree. We read § 8 as giving the land contract vendors the option to pay the taxes themselves but not restricting them to such remedy.

Section 8 expressly reads that in such circumstances the "vendor *may* pay such unpaid tax". The language does not read *"shall"* pay such taxes, and it would do violence to the intent of the contract to convert by judicial construction the permissive into the mandatory. Furthermore,

---

[2] Similarly, where the property is located within a city, summer taxes are levied by the city. MCL 110.2 and 117.3; MSA 5.1931 and 5.2073. The "due date" on such taxes is July 1, and the delinquent date is September 15.

there are sound policy grounds for making § 8 a permissive remedy. Not all land contract sellers have the available cash to pay delinquent taxes. To force such persons to pay the taxes themselves before they could foreclose for past due taxes would in effect unconscionably permit penalties and interest to build up with an eventual seizure of the property by the taxing unit for nonpayment of taxes. Section 8 gives vendors, who have the available cash or liquidity, the opportunity of preventing the accretion of substantial costs in interest and penalty.

*Union Trust v Grant, supra,* is distinguishable. There, a special clause gave the mortgagor a 40-day period after taxes were due to pay the same. There was also a provision that if the monthly installments or taxes were not paid when the same became payable under the mortgage and remained unpaid for 30 days, the mortgagee had the option to declare the entire balance due. The Supreme Court interpreted the contract to mean that mortgagee's right to foreclose for late payment of taxes arose 30 days after the mortgagee had paid the taxes and not 30 days after such taxes were due the tax collector. The Court reasoned that if foreclosure could be had 30 days after taxes became due, it would be 10 days before the mortgagor was required to pay the taxes. In the instant case there is no special 40-day clause.

However, in the instant case, unless the vendors pay the taxes themselves as provided in § 8, they may not demand that the buyer pay the delinquent sums *to the vendors.* They may demand that the delinquency be paid to the township or county treasurer. In the instant case, the notice of default and intent to accelerate is ambiguous as to whether plaintiffs were demanding that Van Nort-

wick pay the past due winter taxes with interest and penalty thereon in the amount of $770.47 to plaintiffs or to the tax collecting authorities. The notice of default simply stated that if the three separate amounts totaling $1,384.47 "was not fully paid within 15 days", the plaintiffs would accelerate. The notice did not state "paid to the vendors".

Assuming, *arguendo,* that the notice of default was in error in that it overstated the amount which plaintiffs demanded be paid *to them,* we find appellant was not prejudiced by the mistake. Appellant's claim was that he couldn't pay the taxes to anyone and, further, that plaintiffs' sole remedy for delinquent taxes was payment of the amount due by plaintiffs themselves. The fact that the land contract purchasers had breached the covenant to pay taxes before they became delinquent gave plaintiffs the right to exercise their option under § 16 of the contract to foreclose without notice. Finally, we observe that if appellant truly believed he was in default only for the three unpaid monthly installments of principal and interest, appellant should have made some tender of that amount within the 15-day period provided in the notice of intent to default.

Under MCL 600.3101; MSA 27A.3101, circuit courts have jurisdiction to foreclose land contracts. Acceleration clauses in land contracts are valid and enforceable. *Larson v Pittman,* 3 Mich App 348; 142 NW2d 479 (1966). The institution of foreclosure proceedings is sufficient notice that the seller has elected to exercise the right to accelerate. No prior notice of the intent to foreclose is necessary. *Dumas v Helm,* 15 Mich App 148, 151; 166 NW2d 306 (1968).

In summary, we hold that the trial court did not err in granting foreclosure to plaintiffs. Appellant

admits he was in default on the three monthly installments due under the terms of the land contract. Under § 12, plaintiffs were entitled to foreclose, without notice, based on that default alone. Further, we find that the 1979 property taxes, first due December 1, 1979, became delinquent on either February 15 or March 1, 1980, thus entitling plaintiffs to foreclose for taxes under § 16 of the contract granting plaintiffs the right to foreclose upon breach "in any of the other covenants or agreements required by this contract to be performed by the purchaser". The fact that plaintiffs may arguably have made a technical error in their notice of default does not preclude foreclosure when such notice was not required by the contract and where appellant was in no way prejudiced by the error.

Affirmed. Costs to plaintiffs.