MICHIGAN NATIONAL BANK v CITY OF AUBURN HILLS

Docket No. 123987. Submitted July 15, 1991, at Lansing. Decided February 18, 1992, at 9:15 A.M. Leave to appeal sought.

Michigan National Bank petitioned the Tax Tribunal for a ruling that it was entitled to a refund by the City of Auburn Hills of personal property taxes paid by the bank to forestall the city's seizure, pursuant to a tax lien, of personal property previously pledged by the delinquent taxpayer to the bank as collateral under a recorded security agreement. The tribunal dismissed the petition, rejecting the bank's argument that its security interest was superior to the tax lien. The bank appealed.

The Court of Appeals *held:*

A lien for unpaid personal property taxes takes precedence over all other claims, encumbrances, and liens, whether they became effective before or after the tax lien. No transfer of the personal property on which the tax is assessed operates to divest or destroy the tax lien, except where the property is actually sold in the course of retail trade.

Affirmed.

*Rasul M. Raheem,* for the petitioner.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Derk W. Beckerleg*), for the respondent.

Before: SHEPHERD, P.J., and CAVANAGH and FITZGERALD, JJ.

CAVANAGH, J. Petitioner Michigan National Bank appeals as of right from an order of the Tax Tribunal that granted respondent City of Auburn Hills' motion to dismiss the bank's petition for the refund of taxes paid under duress. The bank claims that the city's tax lien was not a first priority lien superior to the bank's perfected security interest and it therefore is entitled to a refund

of the tax assessment it was forced to pay to the city. We affirm.

On December 2, 1987, the bank loaned $5.5 million to Merit Stainless Steel, a Michigan corporation doing business at 4475 Purks Drive in Auburn Hills, Michigan. This loan was secured by a security agreement that included all the assets of Merit. The security agreement was perfected by a filing with the Secretary of State on December 16, 1987.

On December 31, 1987, Merit was assessed personal property taxes by the city for the 1988 tax year. On November 22, 1988, Merit defaulted on its loan and, pursuant to the terms of their security agreement, the bank exercised its lien and took possession of all Merit's assets. Shortly thereafter, on December 1, 1988, a tax lien on Merit's personal property arose because of Merit's inability to satisfy its 1988 tax obligation to the city.

On December 16, 1988, the city treasurer went to 4475 Purks Drive to enforce the tax lien against Merit by seizing and padlocking the premises. Agents of the bank had already taken possession of the facility and, to prevent the seizure, they tendered a check in the amount of $27,755.26 to the city.

The bank's petition for a refund of the $27,755.26 was filed on January 13, 1989, and on November 17, 1989, the Tax Tribunal granted the city's motion to dismiss the petition. The tribunal accepted the city's contention that its tax lien was prior, superior, and paramount to the bank's lien. We agree.

In Michigan, taxes are levied for a calendar year and are collected for the calendar year in which the taxes are assessed and the levy is made. *Pere Marquette R Co v Kalamazoo, L S & C R Co,* 158 Mich 40, 42; 122 NW 356 (1909). Tax day is De-

cember 31 and is the day on which the taxable status of real and personal property for the ensuing calendar year is determined. MCL 211.2; MSA 7.2. The owners of personal property having a taxable status are obligated to respond to taxation for the following calendar year, the tax owing being a debt due. The tax obligation, however, does not become a lien until December 1 of the following calendar year. MCL 211.40; MSA 7.81.

As early as 1889, our tax law provided:

> [A]ll personal taxes shall be a lien on all personal property of such persons so assessed from and after the first day of December in each year, and shall take precedence of any sale, assignment of or chattel mortgage, levy or lien on, such personal property, executed or made after said first day of December, except where such property is sold in the regular course of trade. [1889 PA 195.]

In *Tousey v Post,* 91 Mich 631, 633; 52 NW 57 (1892), a case relied on by the bank, our Supreme Court determined that "under the provisions of the tax law, a lien would have attached to all . . . personal property which [was] owned on the 1st day of December, without regard to the date of its acquisition. But no lien would attach to property which had been sold prior to that date." Consequently, one who purchased personal property after the assessment of taxes for the year, but before December 1, a situation that the bank claims is identical to their own, took the property free of any lien for taxes.

A couple of years later, in *Lucking v Ballantyne,* 132 Mich 584; 94 NW 8 (1903), the Court was again called upon to address whether a lien created by the law for the payment of taxes was superior to the lien created by a chattel mortgage. Section 10 of chapter 10 of the charter of the City

of Detroit stated that "[a]ll city taxes upon personal property shall be and remain a lien thereon until paid, and no transfer of the personal property assessed shall operate to devest [sic] or destroy such lien." The *Lucking* Court decided that the language of the statute did not make the lien for taxes superior to liens existing when the tax lien took effect. *Id.* at 585.

In reaching its decision in *Lucking,* the Supreme Court reasoned that the "legislature, having in express terms made this tax lien superior to subsequent transfers, clearly indicate[d], by omitting to specify its effect on prior transfers, an intent that it shall not be superior to them." *Id.* at 586. Further, the policy of the law had always been to make personal property easily transferable and, if the Legislature had intended to make a change that would affect title to property, "it is presumed that [it would have] indicate[d] that intent by appropriate language." *Id.* In accord are *Dunitz v Albert Pick & Co,* 241 Mich 55; 216 NW 382 (1927), and *Detroit Trust Co v Detroit,* 269 Mich 81; 256 NW 811 (1934).

1915 CL 4035 is consistent with the decisions in *Tousey* and *Lucking*:

> And all personal taxes shall also be a lien on all personal property of such persons so assessed from and after the first day of December in each year, and shall take precedence of any sale, assignment or chattel mortgage, levy or other lien, on such personal property, executed or made after said first day of December, except where such property is actually sold in the regular course of trade.

It is clear that under § 4035 a lien that attached on December 1 on personal property of the person assessed took precedence over conveyances, chattel mortgages, execution liens, or liens on personal

property only when the conveyances, chattel mortgages, execution liens, or liens on personal property were executed or made after December 1. OAG, 1931-1932, pp 106-109 (January 26, 1931).

However, § 4035 was amended in 1929 to provide as follows:

> And all personal taxes shall also be a first lien on all personal property of such persons so assessed from and after the first day of December in each year and so remain until paid, which said lien shall take precedence over all other claims, encumbrances and liens upon said personal property whatsoever, whether created by chattel mortgage, execution levy, judgment or otherwise, and *whether arising before or after the assessment of said personal taxes,* and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade. [1929 PA 107; 1929 CL 3429; emphasis added.]

Arguably, "the intent of the legislature in passing Act 107 of the public acts of 1929 was to change the then existing law in relation to tax liens on personal property to make them prior liens to 'other claims, encumbrances and liens upon said personal property . . . whether arising before or after the assessment of said personal taxes.' The legislature possesses the power to subordinate mortgages, liens and encumbrances to tax liens, and under the existing law the tax lien which comes into being on December first is a prior and superior lien to all other mortgages, liens and encumbrances which have been placed on the personal property before or after December first." OAG, 1931-1932, p 107. In contrast, conveyances of interests of a lesser degree than complete ownership, such as mortgages and liens, would not take

free and clear from any obligation to pay the taxes. OAG, 1931-1932, p 109.

In 1934, the statute was amended again to specify that "all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount . . . which said tax liens shall take precedence over all other claims, encumbrances and liens . . . whether such liens, claims and encumbrances . . . become effective prior to the effective date of this act or subsequent thereto, and no transfer of personal property assessed for taxes thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade." 1934 PA 38. Since the enactment of Act 38, "personal property taxes have been and now are a first lien superior to all other claims, encumbrances and liens whether prior or not." *In re Ever Krisp Food Products Co,* 307 Mich 182, 209; 11 NW2d 852 (1943).

In our opinion, the rule of law announced in *Lucking* and *Dunitz,* and reaffirmed in *Detroit Trust Co,* has been changed by statute and is no longer available to the bank. Possible exceptions to the priority of the tax lien may be found in the state statute or in a federal statute such as at issue in *Ever Krisp,* but any such exceptions are not available to the bank in this case. Because it cannot be seriously argued that the bank purchased Merit's personal property in "the regular course of retail trade" or that its claim was backed by a federal lien, we fail to see any exception to the superiority of the city's tax lien.

Affirmed.