BOMARKO, INC v RAPISTAN CORPORATION

Docket No. 157898. Submitted September 21, 1994, at Grand Rapids. Decided December 5, 1994, at 9:10 A.M. Leave to appeal sought.

Bomarko, Inc., and James D. Azzar brought an action in the Kent Circuit Court against Rapistan Corporation, alleging breach of contract because of Rapistan's failure to pay the 1990 summer and winter taxes applicable to certain real property Rapistan sold to the plaintiffs. The closing occurred on February 16, 1990. The exceptions provision in the contract provided that the seller was "to be responsible for all taxes due and/or payable at time of " the closing. The court, Dennis B. Leiber, J., found that the parties' dispute concerned a mistake of law that was not a ground for equitable relief because there was no evidence of inequitable conduct by the plaintiffs. The court then interpreted the applicable statutes and held that the 1990 summer and winter taxes became a debt due on December 31, 1989. The court granted the plaintiffs' motion for partial summary disposition with regard to their breach of contract claim and denied the defendant's motion for reconsideration. The defendant appealed.

The Court of Appeals *held:*

1. The trial court did not err in determining that the parties' dispute concerned a mistake of law and that there was no inequitable conduct by the plaintiffs.

2. The trial court did not err in its legal interpretation of the applicable statutes and its holding that the 1990 taxes became a debt due on December 31, 1989, before the February 16, 1990, closing. The taxable status of the subject property, its value, and the defendant's responsibility as the owner of record for the 1990 taxes were determined as of December 31, 1989, the day designated as "tax day." The trial court correctly ruled that on December 31, 1989, the tax day, all 1990 taxes became a "debt due" to the city, and the defendant, as the owner of record, was the party obligated to make the payment. The

REFERENCES

Am Jur 2d, Mistake, Accident, or Surprise §§ 17, 18; Vendor and Purchaser §§ 52, 325-327.

See ALR Index under Mistake; Sale or Transfer of Property.

property taxes were not "due and payable" until the day of levy. The proration of the 1990 taxes between the buyer and the seller, provided for in MCL 211.2; MSA 7.2, is inapplicable because the parties agreed to a different method of payment.

3. It is the Legislature's intent that "the owner or person otherwise to be assessed," as provided in MCL 211.40; MSA 7.81, is obligated for the taxes for the ensuing year as of the tax day.

4. The parties agreed that the seller was to be responsible for all taxes "due and/or payable at time of close." The word "due" is not equated with the word "payable," but is clearly distinguished from it. The parties did not intend that the word "due" be used in the same sense as the word "payable." The phrases "due and/or payable" must be interpreted to distinguish the date on which the property taxes were "due" and the date on which they were payable.

5. The exceptions provision was clear and unambiguous. It took precedence over any other provision and, as a matter of law, obligated the defendant to pay all the 1990 taxes because they were "due" at the time of the closing in February 1990, even though they were not "due and payable" until the date of levy.

Affirmed.

M. E. KOBZA, J., dissenting in part, stated that the trial court erred with regard to its interpretation of the law, and that the taxes levied on July 1 and December 1, 1990, were not "due and payable" until their levy dates, July 1 and December 1, following the tax day the preceding December 31, that being December 31, 1989. There is no enforceable tax lien until it is perfected by a levy.

1. EQUITY — CONTRACTS — MISTAKE OF LAW.

    Absent inequitable conduct, a mistake of law generally is not a ground for equitable relief.

2. CONTRACTS — REAL PROPERTY — TAXATION — ALLOCATION OF OBLIGATION TO PAY.

    The phrase "due and/or payable at time of close" contained in a contract for the sale of real property whereby the parties allocate the obligation to pay property taxes distinguishes the date on which the property taxes are due and the date on which they are payable; therefore, a seller who by contract "is to be responsible for all taxes due and/or payable at time of close" is responsible for payment of all taxes that become due on the last day of the year, the tax day, even though the

closing occurs subsequently but before the levy date of the taxes (MCL 211.2, 211.40; MSA 7.2, 7.81).

*Tolley, Fisher & Verwys, P.C.* (by *James B. Doezema*), for the plaintiffs.

*McShane & Bowie* (by *Gary G. Love*), for the defendant.

Before: REILLY, P.J., and TAYLOR and M. E. KOBZA,* JJ.

REILLY, P.J. Following a final judgment, defendant filed this appeal as of right from the trial court orders that granted plaintiffs' motion for partial summary disposition with regard to their breach of contract claim and denied defendant's motion for reconsideration.[1] We affirm.

Plaintiffs, James D. Azzar and his assignee, Bomarko, Inc., claimed breach of contract because of Rapistan Corporation's failure to pay the 1990 summer and winter taxes on certain real property in Grand Rapids sold by Rapistan to plaintiffs. All the parties filed motions for summary disposition with regard to the meaning of the tax liability language. Plaintiffs contend that paragraph 6 of the purchase contract is clear and unambiguous and, as a matter of law, requires defendant, the owner of the property on December 31, 1989, to pay the 1990 taxes. Paragraph 6 provides:

Property Taxes and Assessments which are due and payable, or a lien or both, on the property on or before this date, shall be paid by Seller WITH-OUT PRORATION. After this date all special improvements now installed but not yet a lien shall be assumed by Buyer. Exceptions: Seller to be respon-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Counts II and III were later resolved by judgment and are not addressed in this appeal.

sible for all taxes due and/or payable at time of close. Note per this paragraph the term "this date" to be date of close.

The last sentence of paragraph 6, beginning "Exceptions" was a handwritten addition made by Mr. Azzar, and reviewed by defendant's representatives and legal counsel before defendant accepted Mr. Azzar's offer.

Defendant agreed that the interpretation of paragraph 6 was a matter of law, but argued that the language should not be interpreted to include taxes billed after the closing on February 16, 1990. Defendant also claimed that, although it agreed to the addition of the "Exceptions" provision, there was a question of fact with regard to the intent of the parties regarding the additional language.

The trial court did not err in determining that the parties' dispute concerned a mistake of law and not a question of fact. A mistake of law is usually not a ground for equitable relief absent inequitable conduct. The record reveals no evidence of inequitable conduct by plaintiffs. *Schmalzriedt v Titsworth,* 305 Mich 109, 118-120; 9 NW2d 24 (1943); *Sinka v McKinnon,* 301 Mich 617, 626-627; 4 NW2d 32 (1942); *Kamalnath v Mercy Memorial Hosp Corp,* 194 Mich App 543, 548; 487 NW2d 499 (1992); *Heritage Broadcasting Co v Wilson Communications, Inc,* 170 Mich App 812, 818; 428 NW2d 784 (1988).

Also, the trial court did not err in its legal interpretation of the applicable statutes and its holding that the 1990 taxes became a debt due on December 31, 1989. The taxable status of the subject property, its value, and defendant's responsibility as the owner of record for the 1990 taxes were determined as of December 31, 1989, the day designated as the "tax day." In 1990, MCL 211.2; MSA 7.2 provided, in pertinent part:

The taxable status of persons and real and personal property shall be determined as of each December 31, which shall be deemed the *tax day*

. . . .

* * *

In any real estate transaction between private parties *in the absence of any agreement to the contrary,* the seller shall be responsible for that portion of said annual taxes levied during the 12 months immediately preceding, but not including, the day title passes, from the levy date or dates to, but not including, the day title passes and the buyer is responsible for the remainder of such annual taxes. As used in this paragraph *"levy date"* means the day on which any general property tax becomes due and payable. [Emphasis added.]

In 1990, MCL 211.40; MSA 7.81 provided, in pertinent part:

Notwithstanding any provisions in the charter of any city or village to the contrary, *all taxes shall become a debt due to the township, city, village and county from the owner or person otherwise to be assessed on the tax day provided for in sections 2 and 13 of this act,* and the amounts assessed on any interest in real property shall, on the first day of December, for state, county, village or township taxes or upon such day as may be heretofore or hereafter provided by charter of a city or village, become a lien upon such real property, and the lien for such amounts, and for all interest and charges thereon, shall continue until payment thereof. [Emphasis added.]

The trial court correctly ruled that on December 31, 1989, the tax day, all 1990 taxes became a "debt due" to the city, and defendant, as the owner of record, was the party obligated for pay-

ment.[2] The property taxes were not "due and payable" until the date of levy. The proration of 1990 taxes between the buyer and seller provided for by the statute was inapplicable because the parties agreed to a different method of payment.

The designation of December 31 of the year preceding the calendar year in which the property taxes are levied has implications beyond the situation considered here. We note that in 1958, the tax day was moved back from January 1 to December 31 of the preceding year to permit accrual-basis taxpayers to take advantage of property tax deductions for federal income tax purposes in an earlier year accounting period than was possible under the former schedule. 2 Cameron, Michigan Real Property Law (2d ed), ch 28, Notes, p 1340. We also note that in 1994, the Legislature enacted 1994 PA 80, which amended MCL 211.40; MSA 7.81 to provide that, for taxes levied after 1994, the amounts assessed on any interest in real property shall become a lien on the real property on the tax day. Both of these changes in the law clearly indicate the Legislature's intent that "the owner or person otherwise to be assessed" is obligated for the taxes for the ensuing year as of the tax day.

Plaintiffs' reliance on *Roseborough v Empire of America,* 168 Mich App 92; 423 NW2d 578 (1987), and *Bishop v Brown,* 118 Mich App 819; 325 NW2d 594 (1982), is misplaced. In *Roseborough,* the plaintiffs claimed that the defendant bank had failed to pay timely their real estate taxes as required by the parties' mortgage agreement. The plaintiffs contended that the bank's agreement to

---

[2] The word "due" is defined in *The Random House College Dictionary: Revised Edition,* as: "1. immediately owed: *This bill is due.* 2. owing or owed, irrespective of whether the time of payment has arrived. . . ."

pay the taxes "when due" required payment of the 1984 winter taxes on December 1, 1984, the day collection commences and the amounts assessed become a lien on the property. The mortgage agreement provided that the plaintiffs were to make advance monthly installment payments on the taxes and insurance premiums, and the bank was obligated to pay the taxes and premiums "when due." This Court held that the taxes were "due," in the sense of being payable, at any time between December 1 and February 15, the date on which the unpaid taxes become delinquent, not just on December 1.

In *Bishop,* this Court construed a land contract whereby the purchaser agreed to pay all taxes when due. The question presented was when did the purchaser, who did not pay the taxes until after penalties were incurred, breach the land contract. As in *Roseborough,* the term "due" was equated with the word "payable." This Court held that application of MCL 211.40; MSA 7.81 to the terms of the land contract required the conclusion "that though property taxes first become due *in the sense that they may first be paid* on December 1, they do not become delinquent or past due until the following February 15." *Bishop, supra,* p 827. (Emphasis added.)

Neither *Roseborough* nor *Bishop* interpreted the language "due and/or payable" in a buy/sell agreement whereby the parties were allocating the obligation to pay property taxes. In the case before us, the parties agreed that the seller was to be responsible for all taxes "due and/or payable at time of close." The word "due" is not equated with the word "payable," but is clearly distinguished from it. Thus, we cannot say that the parties intended that the word "due" be used in the same sense as the word "payable," as was the case in

*Roseborough* and *Bishop.* Rather, the phrase "due and/or payable" must be interpreted to distinguish the date on which the property taxes were "due" and the date on which they were "payable."

We agree with the trial court that the "Exceptions" provision was clear and unambiguous. It took precedence over any other provision and, as a matter of law, obligated defendant to pay all the 1990 taxes because they were "due" at the time of closing in February 1990, even though they were not "due and payable" until the date of levy. *Michigan Nat'l Bank v Auburn Hills,* 193 Mich App 109, 110-111; 483 NW2d 436 (1992).

Affirmed.

TAYLOR, J., concurred.

M. E. KOBZA, J. *(dissenting).* The trial court granted plaintiffs' motion for partial summary disposition with regard to their claim of breach of contract and also denied defendant's motion for reconsideration.

I would concur in the affirmance of the trial court's ruling that the parties' dispute concerned a mistake of law that is not grounds for equitable relief, and, therefore, defendant is bound by the contract.

However, I believe the trial court's interpretation of the law is in error. The taxes levied on July 1 and December 1, 1990, were not "due and payable" until their levy dates, July 1 and December 1, following the "tax day" the *preceding* December 31, i.e., December 31, 1989.

The contract, paragraph 6, stated, in part:

> Seller to be responsible for all taxes due and/or payable at time of close.

Although the contract was dated January 10,

1990, the closing took place on February 16, 1990. The tax levy of December 1, 1989, was paid by defendant.

Plaintiffs contend that there was a significant change in the legal consequences as a result of the language added by Mr. Azzar. Their contention rests on their assumption that taxes that will be levied during 1990 after the closing are already *due* or payable since "tax day" December 31, 1989.

My esteemed brother and sister of the bench cite *Michigan Nat'l Bank v Auburn Hills,* 193 Mich App 109; 483 NW2d 436 (1992), as support. I feel their reliance in support of the principle they contend it represents is misplaced.

In *Michigan Nat'l,* the city paid a tax bill levied on December 1, 1988, that became a lien on the property when levied. The plaintiff bank claimed a *prior* security interest on the property on which the tax lien *later* arose. The bank claimed a priority interest because its interest arose *first in time.* The opinion on appeal held the tax lien to be superior, *not* because a lien arose on December 31, 1987 (which was "tax day" and still *after* the security interest by the bank taken December 2, 1987), but because the law was changed, making any security lien inferior to a tax lien, even if it arose before the tax lien. The case iterated portions of the pertinent act, 1934 (Ex Sess) PA 38, as follows:

> In 1934, the statute was amended again to specify that "all personal taxes hereafter levied or assessed shall also be a first lien, prior, superior and paramount . . . which said tax liens shall take precedence over all other claims, encumbrances and liens . . . *whether such liens,* claims and encumbrances . . . *become effective prior to the effective date of this act or subsequent thereto,* and no transfer of personal property assessed for taxes

thereon shall operate to divest or destroy such lien, except where such personal property is actually sold in the regular course of retail trade." 1934 [Ex Sess] PA 38. Since the enactment of Act 38, "personal property taxes have been and now are a first lien superior to all other claims, encumbrances and liens whether prior or not." *In re [Dissolution of] Ever Krisp Food Products Co,* 307 Mich 182, 209; 11 NW2d 852 (1943). [*Michigan Nat'l, supra* at 114. Emphasis added.]

The time the tax lien arose is therefore irrelevant to defeat a security agreement covering the taxed property. Interestingly, the *Michigan Nat'l* Court stated several times *when* the lien arose, December 1, the date of levy. In fact, the only issue and holding was that a valid security interest, which arose December 2, *1987,* could not defeat a later tax lien that arose December 1, *1988.* It said:

Shortly thereafter [November 22, 1988, date of default and lien imposed on the loan], on December 1, 1988, a tax lien on Merit's personal property arose because of Merit's inability to satisfy its 1988 tax obligation to the city. [*Michigan Nat'l, supra* at 110.]

December 1, 1988, is the tax levy date for the 1989 taxes. Taxes are paid in advance.

The Court reviewed prior lien statutes and case law and while stating that a lien arose on December 1, it found that the lien could be defeated from payment either by creating a security interest, *Lucking v Ballantyne,* 132 Mich 584; 94 NW 8 (1903), or by sale, *Tousey v Post,* 91 Mich 631; 52 NW 57 (1892). The Legislature passed the above-quoted law to plug the gap to allow tax collection in *any* event, regardless of the transference of title or security interests to the property.

I contend that a certain statement in the *Michigan Nat'l* case, quoted *infra,* is gratuitous, dicta, and, worse, reflects a lack of understanding of the operation and effect of the Michigan tax laws.

Beginning in any given year, the municipality in which land and personal property is located must evaluate it, determine an owner, and list the description, owner, and value in an assessment roll, by December 31, the "tax day." It is when assessments are completed, not when taxes are levied. Later millage elections or changes by the city, county, or township still might alter the number of tax mills, based on the assessed value.

Before the millage "levy," however, the property owners are given a right to challenge at the March Board of Review meetings the value ascribed to their real or personal property.

Later, taxes are levied twice in a year. The first levy date is July 1; and the second is December 1. The first levy usually collects school taxes. The tax bill is required to state the fiscal year of the unit supported. In schools, their fiscal year is usually July 1 to the following June 30. The second levy is December 1 for the county, township, and intermediate schools taxes, whose fiscal year is January 1 through December 31 of the year following the levy, or, payable in *advance.* The lien arises at the time of the levy.

The rule of *Michigan Nat'l* is that neither a sale nor a security interest can defeat a levy from which a tax lien arises because of 1934 (Ex Sess) PA 38.

The trouble arose from the following sentences in *Michigan Nat'l, supra* at 111:

> The owners of personal property having a taxable status are obligated to respond to taxation for the following calendar year, the tax owing being a

debt due. The tax obligation, however, does not become a lien until December 1 of the following calendar year. MCL 211.40; MSA 7.81.

I would describe this statement as gratuitous because it was unnecessary to interpret the statute and represented the Court's rationale regarding the operation of 1934 (Ex Sess) PA 38, which I submit was incorrect.

The statement just referred to is incorrect because the *Michigan Nat'l* opinion cites the case of *In re Dissolution of Ever Krisp Products Co, supra,* as supporting its interpretation of the act discussed in both cases, 1934 (Ex Sess) PA 38.

In the *Ever Krisp* case, a petition for corporate dissolution was filed. Claims for taxes were submitted by the City of Detroit, Wayne County, and the United States Government. The Court was trying to ascertain if the federal claim was a "priority" lien or was filed under the federal statute discussing the entitlement to priorities among claims. The Court found that the City of Detroit and Wayne County enjoyed a superior position with regard to the property taxes for 1938 and 1939, but not for 1940. In essence, the claims for 1938 and 1939 were "perfected" liens, but 1940 taxes were not perfected on June 28, 1940, the date the receiver took possession of the property. The priority of the federal tax claim was established among all claims, except liens on that day. The 1940 taxes did not constitute a lien until August 15, 1940, the date the taxes levied by the City of Detroit on July 1, 1940, became delinquent. Then the lien for those taxes was "perfected" by operation of law, without resort to a court suit to distrain the property pending collection of the money.

The statute interpreted in *Ever Krisp* was the same statute reviewed by the *Michigan Nat'l*

Court, 1934 (Ex Sess) PA 38. In *Ever Krisp,* the
Court stated the liens were perfected on July 15
(city tax levy) and December 1 (county tax levy).
*Id.* at 207. They even take precedence over a prior
mortgage, which gave impetus to the change ef-
fected by 1934 (Ex Sess) PA 38. See *Lucking* and
*Tousey, supra.* However, the *Ever Krisp* opinion is
clear that there is no enforceable lien until it is
"perfected" by the levy. Until then, there is no
specific amount until July 15 or December 1.
Indeed, *Ever Krisp* states in one phrase that the
taxes did not even rise to the level of a lien.

> We hold that these city and county taxes had
> become determined, specific, complete and per-
> fected liens, and the exact amounts thereof defi-
> nitely fixed, after these taxes had been assessed
> and spread on the respective *tax* assessment rolls,
> the respective boards of review or the city council
> had completed their duties, and the time had
> arrived under express declaration in the State tax
> laws and the city charter when these city and
> county taxes became a lien on the property. All
> statutory and charter requirements of due assess-
> ment and review had been completed, and the
> time for so doing had expired at the respective
> times when these taxes became a lien. The liens
> were no longer inchoate. As to city taxes, this date
> is fixed by the city charter—July 15th of each
> year; and as to the county taxes, the statute fixes
> the date - December 1st of each year. These city
> taxes had become a specific and perfected lien on
> July 15, 1938 and 1939 respectively. The county
> tax for 1939 became a similar lien on December 1,
> 1939. No further process of law or court proceed-
> ings was required to determine the amount, or to
> complete the fixing of the lien, on the respective
> dates referred to in the city charter and in the
> statute law. We hold that the liens were specific
> and perfected and in effect on those respective
> dates, before the receiver became the owner of the

assets of the corporation for the benefit of credi-
tors. We are in accord with the decision of the
lower court, that the property of the insolvent
debtor came into the hands of the receiver bur-
dened with city and county liens. These city and
county tax liens are superior to the claim of the
United States for priority as to social security
taxes and capital stock taxes. *But as to the city
taxes for the year 1940. In 1940, these taxes did
not become a lien until July 15, 1940, and this was
subsequent to the time (June 28, 1940) when the
receiver became possessed of the property.* The
receiver did not take the property burdened with a
city tax lien for the 1940 city taxes. [*Ever Krisp,
supra* at 211-212. Emphasis added.]

Significant to the present case, nowhere is it
suggested that taxes were either due and payable,
or due, or payable after the preceding December
31 of the levy dates of July 15 or December 1. In
the present case, the City of Grand Rapids and
other municipalities levy taxes July 1. Therefore,
none of the cases cited in the *Michigan Nat'l* case
stand for that proposition, and the *Michigan Nat'l*
issue did not turn on the issue whether any taxes
to be levied in 1988 arising from the assessment
spread on the tax roll on December 31, 1987, were
due. The only issue before the Court in *Michigan
Nat'l* was whether a security interest in personal
property given on December 2, 1987, is superior to
taxes levied (perfected and liquidated) the follow-
ing July 1 and December 1. The Court said "No"
because of the adoption of 1934 (Ex Sess) PA 38
because that statute was passed to resolve all
questions of superiority of liens even where the
tax lien is the last lien.

However, our analysis should not stop here. The
question, "What taxes were 'due' on February 16,
1990?" remains. A federal court decision, *United
States v Michigan,* 429 F Supp 8 (ED Mich, 1977),

involved the question whether land purchased by the plaintiff, the United States, after "tax day," December 31, 1968, but before "lien day," December 1, 1969, following tax day was subject to an inchoate lien, one which was not perfected. The court said "No." They called December 31, as used in MCL 211.2; MSA 7.2, "tax day" or "due day." No one contended the issue was whether taxes were "due"; the issue was whether there was a lien, even an inchoate lien, the United States government was required to pay when title passed to it before the tax was levied, on December 1. The court said:

> In each of the four cases at issue here the plaintiff United States of America purchased the real property subsequent to the tax day, or "debt due" day, but prior to the first day of December "lien day" for the calendar years in question—December 31, 1968, the "debt due" day, and December 1, 1969, the "lien day," using the dates in case No. 36447 as an example, the property having been purchased November 21, 1968. Defendants herein suggest that although the statute specifies the first day of December as the day the lien for taxes attaches, nevertheless there is, in effect, "an inchoate lien" which attached on the previous December 31. Such date is denominated in the statute as the tax day and/or "debt due" day. . . .
>
> . . . Defendants would have the Court treat the "debt due" in [MCL 211.40; MSA 7.81] as an "inchoate lien" upon the property. In the very same sentence the word "lien" is used. We can find no justification, legally or logically, to assume that the legislature meant "inchoate lien" by use of the words "debt due," particularly when the word "lien" appears in the same sentence. Had the phrase "debt due" been intended as a lien of any kind the legislature could have easily so indicated. The Supreme Court of Michigan has spoken to this on several occasions. In *City of Gaylord v City*

*Clerk,* 378 Mich 273, 301; 144 NW2d 460 [(1966),] the Court said:

"A lien is not an essential element of the power of taxation. See Hellerstein, State and Local Taxation, pp 15-20 (1952). Unless a taxing statute expressly so provides, taxes do not constitute a lien on property. *Tousey v Post,* 91 Mich 631, 634 [52 NW 57 (1892)]; 84 CJS Taxation, § 585, p 1180." [*United States v Michigan, supra* at 10-11.]

But the *City of Gaylord* case was dealing with a statute that did away with an ad valorem personal property tax lien. The statute, the Industrial Development Revenue Bond Act, MCL 125.1251 *et seq.*; MSA 5.3533(21) *et seq.,* gave municipalities power to sell income-tax-exempt revenue bonds to purchase industrial buildings and equipment. The municipalities may then lease those facilities to a corporation that is to operate the facilities, pay the lease for twenty-five years, and then receive title to the facilities for $1. Part of the act removed the tax lien. The issue (among many) was whether the removal of the ability to impose a lien infringed on the ability of the township to tax, which the Michigan Constitution forbids. Const 1963, art 9 § 2. The Court stated the lien was not essential to the power to tax, as quoted above in the *United States v Michigan* case, but added:

Unless a taxing statute expressly so provides, taxes do not constitute a lien on property. *Tousey v Post,* 91 Mich 631, 634 [52 NW 57 (1892)]; 84 CJS, Taxation, § 585, p 1180. [*City of Gaylord, supra* at 301.]

Again, the issue in *City of Gaylord* had nothing to do with the "debt due" date mentioned in *United States v Michigan.* Nor did it have anything to do with the ability to collect the "debt

due" before the levy date, December 1, 1969. In fact, there is no discussion of when the debt for taxes becomes due.

In the 1943 case, *Ever Krisp, supra* at 206, there were sporadic references to other states' tax laws referring to dates when taxes become due, comparing United States liens to debts due but not liquidated, and of preferences between chattel mortgage (earlier) over an ad valorem tax lien (later). *Id.* at 207. The only proposition *Ever Krisp* stands for is that an inchoate lien cannot be collected on. If one accepts the representation of plaintiff, Bomarko, Inc., an assessment creates an inchoate lien. *Ever Krisp* does *not* say the debt for future tax levies is due on December 31 preceding the levy date.

The *City of Gaylord* case merely separates the power to tax from the lien that only can arise by statute, citing the *Tousey* case, *supra,* a pre-1934 decision that helped bring about the adoption of 1934 (Ex Sess) PA 38 to insure the dominance of the lien for taxes over any transfer of any interest before or after the *levy* date.

Therefore, the first case to use "debt due" and "tax day" as synonymous was a federal court determining the priority of a city tax lien levied *after* the purchase of property by the United States. The decision contradicted the interchangeability of "tax day" and "debt due" day. The "debt" was, *in effect,* not due until the lien arising of necessity by statute, *Tousey, supra* at 634, arose on the day of levy, December 1.

Furthermore, the federal court ignored the plain language of MCL 211.2; MSA 7.2, which at the time stated in relevant part:

As used in this paragraph "levy date" means the

day on which any general property tax *becomes due.*

In *Gilken Corp v Comm'r of Internal Revenue,* 176 F2d 141 (CA 6, 1949), the issue was whether a person who bought property in the City of Detroit on June 1, 1940, and paid taxes levied on July 15, 1940, could deduct those taxes. The taxes were assessed on April 1, 1940, before the sale to the taxpayer. The court said:

> The tax court found that the charter of the City of Detroit "makes the tax a debt of the owner from the time of the listing of the property for assessment by the board of assessors on April 1st, and makes the tax *due and payable on July 15th,* on which date it becomes a lien upon the property taxed." The tax court found further as a fact that the $8,200 included in the petitioner's gross income in its income tax return for the taxable year ending July 31, 1942, was paid to the petitioner as rent.
> In our opinion, the tax court correctly decided the case upon both propositions. [*Id.* at 143.]

The nexus of the dispute here centers on the language in MCL 211.40; MSA 7.81:

> [T]axes shall become a debt due to the township, city, village and county from the owner or person otherwise to be assessed on the tax day provided for in sections 2 and 13 of this act, and the amounts assessed on any interest in real property shall, on the first day of December, . . . become a lien . . . .

Two quick points should be noted. First, the statute states a basic tax law axiom: what taxes are, a debt; who pays; and to whom paid, the municipality. Second, a lien attaches on December 1 for the county, village, or township taxes.

It does *not* say taxes are a "debt due" from the day of value assessment, December 31 preceding the lien date. The above describes the taxes as being due from the *owner or* the "person otherwise to be assessed on the tax day provided . . . ." It also says the "taxes *shall become* a debt due," indicating a future obligation. Second, the portion of the first sentence "person otherwise to be assessed on the tax day," should not be interpreted to reflect back to the time a debt becomes "due." Everything after the word "person" is defining who the person is—the person assessed on the previous December 31. Last, the sentence distinguishes "owner" from "person otherwise to be assessed on the tax day." This distinction implies that the debt could become due from a person other than the one listed on the "assessment roll" on December, as a result of, for example, a transfer in ownership after that time.

Further, the purpose of MCL 211.40; MSA 7.81 is to explain and effectuate the date taxes are "payable" and to provide a remedy i.e., a lien to assist the enforcement of payment. The entire section of laws containing the statute is known as "Completion of Assessment" and speaks to the procedure a municipality uses to determine the amount of taxes needed to pay for the operation of government. In effect, on November 5, the supervisor of a township "spreads the taxes" levied against the assessments of property value. Thus, his roll is given to the treasurer, whose duty is to send tax bills identifying what fiscal year and which unit taxes are being collected. Traditionally, city (and some school) taxes (with bills) are sent on July 1. County, township, and intermediate school taxes are sent on December 1. Both dates are dates the now-determined taxes become an enforceable perfected lien on the land, taking precedence over

all other debts and mortgages secured by the land. MCL 211.40; MSA 7.81.

In the scheme of the statutes for collection, taxes are not delinquent until February 15, following the December 1 levy. MCL 211.44; MSA 7.87. In the other important statute discussed, MCL 211.2; MSA 7.2, the "tax status" day, December 31, fixes the value of land and determines who should receive the tax bill. This is the day the assessment roll, as distinct from the "tax roll," MCL 211.39; MSA 7.80, is determined. Importantly, the statute goes on to discuss the method of prorating taxes *levied* when either a municipality or a private person is buying land. Taxes are deemed paid in advance for the future fiscal year of the municipality. MCL 211.40; MSA 7.81 states the treasurer shall send a statement "setting forth the date of the commencement and ending of the fiscal year of each taxing unit of government during which general taxes stated thereon will defray the costs of governmental services rendered thereby." This bill is sent by the treasurer on the "levy" date. MCL 211.2; MSA 7.2 speaks to and explains the term "levy date": "[a]s used in this paragraph 'levy date' means the day on which any general property tax becomes due and payable."

The date the tax bill is due and the date it is payable are one and the same under MCL 211.40; MSA 7.81.

The problem I see in this case is twofold: (1) the continuing mistaken assumption that because there is a "debt," the "debt" is "due," and (2) the careless interpretation of the term "debt due" used in the context of MCL 211.40; MSA 7.81 by courts involved with issues not discussing the issue regarding when the debt becomes "due." In a way this is the first case that discussed this issue directly.

Respecting the first point, acknowledgment that an obligation arises and becomes a debt does not make it "due" any more than a contract with a future payment makes that payment "due" before its "due date" or when it's "payable."

With regard to the second point, the words of the statute state "[A]ll taxes *shall become* a debt due *to* the [municipality] . . . ." (Emphasis added.) The statute goes on to say *who* will owe the debt, and *one* of those who owe the debt could be the person whose property was assessed on the tax status day, the preceding December 31.

Those cases using and abusing the language of the statute have been discussed. A case that is close to our case is *Roseborough v Empire of America,* 168 Mich App 92; 423 NW2d 578 (1987). The property owners-mortgagors sued their mortgagee bank for failing to pay taxes "when due" pursuant to the language of the mortgage. The homeowners claimed they lost a deduction on their federal income tax because the bank paid the taxes levied on December 1, 1984 (winter taxes), on January 16, 1985. Thus, because the taxes were not paid for the homeowners in their fiscal year, they could not claim the deduction. The Court had to interpret the mortgage contract language "when due" in relation to the obligation to pay taxes under the law. The Court held "when due" meant when payable. That was a period after December 1 and before the tax bill became delinquent on February 15. The only distinction one could draw between "when due" or "payable" is that "when due" means the first date it becomes payable, and "payable" is a period of time including the "when due" date. However, no real distinction should be attached because the taxes *remain due* until paid. They remain payable until February 14, after which they become overdue or delin-

quent and subject to a penalty. MCL 211.44; MSA 7.87.

The *Roseborough* case interpreted a similar problem of what point in time taxes should be paid "when due." *Roseborough* agreed with the decision of *Bishop v Brown,* 118 Mich App 819; 325 NW2d 594 (1982), that taxes are not required to be paid "when due" under a land contract at the first point in time they become due on December 1, but equated "when due" with "or payable," which extended the time they were "due." The decision is clear and relevant to our issue:

> Plaintiffs cite *Bishop v Brown,* 118 Mich App 819; 325 NW2d 594 (1982), as support for the proposition that when due means December 1, which is the day that collection commences and the amounts assessed become a lien on the property. MCL 211.40: MSA 7.81. Plaintiffs' reliance on *Bishop* is misplaced.
>
> *Bishop* construed a provision in a land contract whereby the purchaser agreed to pay all taxes on the property when due. The question presented by that case was when did the purchaser, who did not pay the taxes until after penalties were incurred, breach the land contract. We held that the breach occurred at the time late penalties were assessed, not at the time when the property could have been seized and sold to cover the tax lien. 118 Mich App 826. *Bishop* is significant because, although we were faced with the same contract language as that presented herein, we did not interpret the land contract as requiring payment of taxes at the moment they first became due. In fact, we recognized that taxes are "due," or payable, over a period of time and not on any single date:
>
> "Application of the statute to the terms of the land contract in the instant case leads us to conclude that though property taxes first become due in the sense that they may first be paid on December 1, they do not become delinquent or past due until the following February 15." [*Id.,* p 827.]

Plaintiffs' argument would have more force if the mortgage agreement contained qualifying language such as "when first become due" or "at the moment taxes become due." However, such qualifying language is absent. It is a cardinal rule of contract construction that an unambiguous agreement must be construed according to its plain meaning. *Friske v Jasinski Builders, Inc,* 156 Mich App 468, 472-473; 402 NW2d 42 (1986), lv den 428 Mich 880 (1987). Here, the mortgage agreement is not ambiguous. As recognized by *Bishop,* the plain meaning of when due is that period between December 1 and February 15. Because defendant paid the taxes on January 16, it satisfied its obligation under the mortgage agreement to pay the real estate taxes when due. [*Roseborough, supra* at 95-96.]

The language of our contract is similar, "[S]eller to be responsible for all taxes due and/or payable at time of close," and I would find that the *Bishop* and *Roseborough* cases are not distinguishable from the present case with respect to the issue. The cases cited by the majority dealt with distinctively different controversies that did not turn on precisely when taxes become "due," but rather with the priority of subsequent tax liens over prior mortgage liens. Before the adoption of 1934 (Ex Sess) PA 38 (MCL 211.40; MSA 7.81), liens arising before the tax lien date were superior; *after* the adoption they were inferior. When taxes were "due" had no bearing on the lien question.

Furthermore, it strains logic to find that something is "due" before the amount is liquidated, July 1 and December 1. Common sense and the customary usage of the words "due and/or payable" when referring to taxes in contract language can allow for the existence of an obligation without requiring it to be "due." The words, in fact, are used interchangeably as the *Roseborough*

Court did, relying on a similar finding in *Bishop.*
Logic further would not require that a debt be
"due" unless it was (1) known in amount *and* (2)
payable. A simple reference to any commercial bill
or contract obligation easily distinguishes the exis-
tence of a debt and when *money* is due, which
means due now, not due now but not payable until
six or twelve months from now.

One good reason for this is that units of govern-
ment will not know how much taxes will be
"spread" on the *tax roll* because special millages
or assessment valuation changes to the December
31 assessment roll may be made by actions of an
election or the State Tax Commission. See MCL
211.39a (1), (2), (3), (4); MSA 7.80(1)(1), (2), (3), (4).

Further, one effect of such a strained interpreta-
tion is that a person selling property one day after
the start of a fiscal year, say of 1990, becomes
liable for all property taxes then levied for county,
township, and remaining school district taxes
through their fiscal year, December 31, 1990, as
well as all taxes to become due July 1 for a city or
school fiscal year ending June 30, 1991, and *also*
for the taxes to be levied December 1, 1991, for the
fiscal year commencing January 1, 1991, through
December 31, 1991, one day short of two full years
of taxes.

Contrast that interpretation with the current
customary application that taxes "due" are taxes
"levied" December 1 (MCL 211.2; MSA 7.2) and
taxes due *or* payable mean the same thing (*Rose-
borough supra,* and *Bishop, supra*) in the commer-
cial world.

I find that the trial court erred with regard to
the law in granting plaintiffs' motion for summary
disposition. I determine MCL 211.40; MSA 7.81
and MCL 211.2; MSA 7.2, when read with the
entire tax law, to have been misinterpreted by the

Court in *Michigan Nat'l, supra,* which was not dealing with our issue in the first place.

Further, MCL 211.40; MSA 7.81, as amended by 1934 (Ex Sess) PA 38, addressed a deficiency of the law, depriving municipalities of their right to collect taxes against other precedent lienholders, and did not intend to turn a general legal obligation to pay property taxes whose amount was neither known, due, or payable, into a "debt due." Earlier case law itself only defined this amoebic obligation as an "inchoate lien," a term used to assist units of government in the collection process before the amendment of the statute by 1934 (Ex Sess) PA 38. *Michigan Nat'l, supra,* gives a good history of priority among lienholders. Today, even the concept of a "debt" owing is transcended by the superiority of the lien for taxes over all liens precedent or subsequent. We should not elevate an anachronism into a principle of law that simultaneously strains logic and custom and is unsupported by case law that truly addressed the issue before this Court.

I would reverse and remand the case to the trial court for entry of a judgment of summary disposition for defendant under MCR 2.116(I)(2).